Per A. Ramfjord, OSB No. 934024
per.ramfjord@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

and

WILSON SONSINI GOODRICH & ROSATI
Amy Candido (*pro hac vice*)
acandido@wsgr.com
Charles Tait Graves (*pro hac vice*)
tgraves@wsgr.com
Jordan Jaffe (*pro hac vice*)
jjaffe@wsgr.com
Telephone: 415.947-2000

Attorneys for Defendant

[*Additional counsel for Defendant listed on signature page*]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAT SOLUTIONS, LLC, | Case No.: 3:22-cv-00088-IM |
| Plaintiff, | MOTION TO DISMISS |
| v. | ORAL ARGUMENT REQUESTED |
| CONVOY, INC., | |
| Defendant. | |

Page 1 - MOTION TO DISMISS

## LOCAL RULE 7.1(a) COMPLIANCE

Pursuant to Local Rule 7.1(a), counsel for Defendant Convoy, Inc. ("Defendant") conferred via telephone with counsel for Plaintiff DAT Solutions, LLC ("Plaintiff") regarding this motion, and Plaintiff opposes the motion.

## MOTION

Pursuant to Rule 12(b)(6), Defendant hereby moves to dismiss Counts 1-2 and 4-6 of Plaintiff's Complaint (ECF No. 1) for failure to state a claim upon which relief can be granted.

## MEMORANDUM OF POINTS AND AUHORITIES

## I.     INTRODUCTION

Five causes of action in Plaintiff's Complaint contain legal defects and should be dismissed. For at least three – unjust enrichment, unfair competition, and tortious interference – the defects cannot be cured by amendment.

This action arises out of Plaintiff's claim that Defendant improperly used trade secrets relating to Plaintiff's "load board" in creating its own new and differing product. Plaintiff's "load board" allows freight brokers to post listings of shipments when a trucker is needed to transport a load. Truckers can use the information in the listings to identify and negotiate terms for shipments they want to carry. Defendant, which formerly utilized Plaintiff's "load board" pursuant to a license agreement governed by Delaware law, is a technology-driven company that has developed its own, different digital freight network to make freight shipments easier and more efficient. Plaintiff now claims, on information and belief, that Defendant breached the license agreement and engaged in multiple statutory and common law violations by misappropriating Plaintiff's data and trade secrets and developing its own different product.

Because Plaintiff's statutory and tort claims are uniformly defective as a matter of law, Defendant now moves to dismiss them in their entirety. The specific grounds for dismissal are as follows:

- *First*, Plaintiff's statutory claims under both the federal Defend Trade Secrets Act (DTSA) (Count 1) and the Delaware Uniform Trade Secrets Act (UTSA) (Count 2) require Plaintiff to plead that it employed reasonable security measures to guard the alleged secrets. Plaintiff has done no such thing. On the contrary, Plaintiff boasts that the source of its alleged secrets – its "load board" – has been openly available for truckers to view at some 1200 "monitors located inside truck stops." In other words, Plaintiff's own Complaint acknowledges that it has not done anything to prevent a wide section of the trucking industry from viewing the product. It therefore has failed to plead a required element of a trade secret cause of action under the DTSA and the Delaware UTSA.

- *Second*, Plaintiff's three tort claims—for unjust enrichment, unfair competition and tortious interference (Counts 4-6)—are preempted as a matter of law by the Delaware UTSA since they merely repackage the accusation that Defendant misused allegedly confidential business information. This is because Delaware's Supreme Court has taken the broad, majority approach to UTSA preemption, under which overlapping tort claims alleging a misuse of supposedly confidential business information are extinguished as a matter of law. The rationale for this preemption is to ensure that such overlapping claims are adjudicated according to the rules a state legislature has enacted, and to prevent plaintiffs from circumventing those rules through alternative tort claims. On this question of Delaware state law, its highest court has conclusively spoken.

- *Third*, Plaintiff's claim for unjust enrichment (Count 4) also fails because there is no such thing under Delaware law as a stand-alone claim for unjust enrichment, and certainly none where there is already a written contract that governs the parties' relationship.

- *Fourth*, Plaintiff's claims for unfair competition (Count 5) and tortious interference (Count 6) also fail because Plaintiff has not sufficiently alleged the existence of any interfered-with customer, and because they are duplicative of Plaintiff's breach of contract claim.

For all of these reasons, Defendant respectfully requests that the Court dismiss Counts 1-2 and 4-6, and that it dismiss Counts 4-6 with prejudice because amendment would be futile.

## II. BACKGROUND

### A. The Parties

Plaintiff was formed decades ago. It operates a "load board" which truckers can check for listings posted by freight brokers, among others, seeking shipment to a destination. Plaintiff's service began as a bulletin board posted inside truck stops that evolved into a system that could be accessed through monitors in truck stops and mobile applications. While Plaintiff took years to recognize an industry shift to technology-based services, its load board product is nonetheless market-dominant.

Defendant is a technology-driven company which has modernized the trucking industry through new and different services that are easy to use and to access. This cuts out inefficiencies, thereby increasing opportunities as well as reducing the costs and wasted energy that arise when trucks drive without loads. These advances have proven very popular.

### B. Plaintiffs' Federal DTSA and Delaware UTSA Trade Secret Claims

Plaintiff generally alleges that Defendant improperly used information from Plaintiff's load board to create a new, differing product. To that end, it brings identical trade secret

misappropriation claims under the federal DTSA and Delaware UTSA (Counts 1 and 2). *See* Complaint ¶¶ 49-64.

The gist of Plaintiff's allegations is that Plaintiff and Defendant entered into a contract through which Plaintiff licensed Defendant "to use and access the DAT load board." Complaint ¶ 4.[1] From this, Plaintiff asserts – on "information and belief" – that Defendant must have misused some sort of secret information when Defendant developed a new product called Convoy for Brokers. *See* Complaint ¶¶ 5, 8-9. For example, using the type of place-holder allegations that are commonplace in weak trade secret lawsuits, Plaintiff speculates that "[o]n information and belief, Convoy could not have built (and did not build) its pricing algorithm, or otherwise create a functional load board, without using and misappropriating the proprietary data and trade secrets it was accessing for improper purposes on the DAT load board." *See id.* ¶¶ 46-48. While this is not the time or place to debate Plaintiff's astonishingly vague descriptions of supposed "trade secrets" and its empty accusations of misuse, none of that is necessary to dispose of these two statutory claims because Plaintiff has not properly alleged that it took reasonable steps to keep such information confidential.

To the contrary, Plaintiff concedes that its "load board" is something widely available for truckers to review – for example, Plaintiff boasts that "[b]y 2001, customers could access the DAT load board by internet, fax, telephone, mail, or through the monitors located inside truck stops—of which there were approximately 1200." *See id.* ¶ 17. Plaintiff also included a screen shot of its load board user interface in its public pleading, *see id.* ¶ 45, and nowhere does Plaintiff allege that it took steps to keep the product secret from the general population of

---

[1] Plaintiff asserts a cause of action for breach of contract that is not at issue on this Rule 12(b)(6) motion. *See* Complaint ¶¶ 65-73.

Page 5   -   MOTION TO DISMISS

truckers in the industry. Rather than facts, Plaintiff offers only a conclusory allegation that it required Defendant to keep the data on its load board "confidential." *See id.* ¶¶ 51, 60. Because that is insufficient, these claims fail.

### C. Plaintiff's Three Tort Causes of Action

In addition to its trade secret misappropriation and breach of contract claims, Plaintiff also alleges three duplicative tort claims:

- First, Plaintiff alleges unjust enrichment, and contends that Defendant breached the contract by impermissibly using "data and information" to create a new product. *See* Complaint ¶¶ 74-77.

- Second, Plaintiff alleges unfair competition, and contends that it expected a business relationship with "carriers, shippers, brokers, and other freight market participants, but that Defendant unfairly competed by (1) breaching the contract; and (2) "misappropriating DAT's proprietary data and trade secrets[.]" *See id.* ¶¶ 78-81.

- Third, Plaintiff alleges "tortious interference with prospective business opportunities," which repeats the unfair competition claim almost verbatim. *See id.* ¶¶ 82-85.

Once again, because these claims are preempted and fail as a matter of law, they are also subject to dismissal.

## III. ARGUMENT

### A. Legal Standard: Motion to Dismiss

The *Twombly/Iqbal* pleading rules prohibit plaintiffs from substituting generic, conclusory allegations that track the elements of a cause of action in place of concrete factual allegations specific to the dispute. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). A plaintiff

must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and thus a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *See id*. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (*quoting Twombly*, 550 U.S. at 555). That is, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) (affirming Rule 12(b)(6) dismissal).

*Iqbal* explains the method for analyzing a complaint on a Rule 12(b)(6) motion. First, courts identify and disregard allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679-80. Second, courts look at the remaining fact allegations and "determine whether they plausibly give rise" to a claim. *Id*. Fact allegations that are "'merely consistent with' a defendant's liability" are not enough to state a claim, because such facts "stop[] short of the line between possibility and plausibility[.]" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557). Under this standard, Plaintiff's two claims for trade secret misappropriation and its three tort claims should all be dismissed.

B.   **Plaintiff Fails to State Federal and Delaware Trade Secret Claims**

Plaintiff fails to plead facts supporting a required element of its federal and Delaware trade secret claims: use of reasonable security measures to guard the alleged trade secrets.

Under the DTSA and the Delaware UTSA, a plaintiff must employ reasonable security measures to protect the claimed secret from disclosure. *See* 18 U.S.C. § 1839(3)(a) (reasonable security measures requirement); Del. Code §2001(4)(b) (a trade secret must be "the subject of

Page 7   -   MOTION TO DISMISS

efforts that are reasonable under the circumstances to maintain its secrecy"); *Wayman Fire Prot. v. Premium Fire & Sec., LLC*, 2014 Del. Ch. LEXIS 33, at *55 (Del. Ch. Mar. 5, 2014) (finding that relevant information did not qualify as protectable trade secrets because no efforts were made to protect their secrecy). "[W]here an alleged trade secret consists primarily, if not entirely, of a computer software's functionality—functionality that is made apparent to all users of the program—the reasonableness analysis will often focus on who is given access, and on the importance of confidentiality and nondisclosure agreements to maintaining secrecy." *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2022 U.S. App. LEXIS 6070, at *5 (2d Cir. Mar. 9, 2022) (applying DTSA) (cleaned up).

Plaintiff has not sufficiently alleged that its "load board" or any information, data or know-how it contains qualifies as a trade secret because it failed to allege that reasonable efforts were taken to maintain its secrecy. In fact, as to the trucking industry writ large, the Complaint does not include factual pleadings of *any* security measures related to the load board. To the contrary, the Complaint includes several references to its longstanding public dissemination. The Complaint explains that Plaintiff's load board began as a "bulletin board" that was posted inside truck stops and thus easily viewable. *See* Complaint ¶¶ 2, 16. The Complaint also describes the ease with which the load board, and associated information such as rates, pricing, and shipping data can be accessed *to this day*. *See id.* ¶ 2 ("the DAT load board [] can easily be easily accessed by market participants through mobile app, internet, telephone, fax, and other means."); ¶ 17 ("By 2001, customers could access the DAT load board by internet, fax, telephone, mail, or through the monitors located inside truck stops-of which there were approximately 1200."); ¶ 18 ("The DAT load board can be easily accessed through an app on customers' mobile devices, or through more traditional means."); ¶ 23 ("This benchmark rate, and other proprietary pricing and

Page 8  -   MOTION TO DISMISS

shipping data and information, is available to customers through the DAT network."). Plaintiff even includes a screen shot of its load board user interface in the public pleading, thereby demonstrating the public nature of the interface. *See id.* ¶ 45.

To be sure, Plaintiff pleads that its license agreement required *Defendant* to maintain confidentiality of the load board, but that is hardly equivalent to employing security measures as to the public or the industry writ large —especially where, as here, the alleged trade secret consists of load board features that are readily apparent to all users of Plaintiff's widely-distributed program. *See Turret Labs*, 2022 U.S. App. LEXIS 6070, at *5-9 (affirming dismissal of DTSA claim brought by the owner of a software program facilitating the scheduling, payment, and shipment of air freight, because plaintiff failed to allege that it had confidentiality agreements in place with other users of the program, or that access was limited solely to persons who were bound by such agreements). Nor is it enough that Plaintiff offers a bare conclusion that it employed reasonable security measures. *See id.* ¶¶ 51; 60 ("reasonable measures [were taken] to safeguard and keep secret its trade secret information[.]"). Such legal conclusions are insufficient to survive a motion to dismiss under both *Iqbal* and Delaware law. *MHS Capital Ltd. Liab. Co. v. Goggin,* 2018 Del. Ch. LEXIS 151, at *37 (Del. Ch. May 10, 2018) (dismissing misappropriation claim because plaintiff "simply recited the bare legal conclusion" that reasonable steps were taken to maintain secrecy without providing "supporting detail").

C. **The Delaware Uniform Trade Secrets Act Preempts Plaintiff's Three Tort Claims**

The Delaware UTSA preempts Plaintiff's three tort claims (for unjust enrichment (Count 4), unfair competition (Count 5), and tortious interference with prospective business opportunities (Count 6)) because they are premised upon, and are grounded in, the same facts

Page 9 - MOTION TO DISMISS

which purportedly support allegations of trade secret misappropriation.[2] As a result, they should be dismissed.

### 1. Legal Standard: Delaware UTSA Preemption

Delaware's UTSA preempts alternative civil claims based on allegations of trade secret misappropriation. *See* Del. Code. § 2007(a). Delaware thus follows the majority, broad approach to UTSA preemption. *See Atl. Med. Specialists, Ltd. Liab. Co. v. Gastroenterology Assocs., P.A.,* 2017 Del. Super. LEXIS 196, at *39 (Del. Super. Ct. Apr. 20, 2017) (explaining that Delaware is with the "majority view" of UTSA preemption). Specifically, Delaware's UTSA preempts as a matter of law any common law claims based upon misuse of information said to be confidential or secret – such as breach of confidence, fraud, conversion, tortious interference, and the like. This rule of statutory preemption is based a precedential ruling by Delaware's Supreme Court and subsequent case law, as well as the text of the Delaware statute itself, the UTSA's explanatory commentary, and Delaware's policies in favor of statutory preemption.

More specifically, the Delaware Supreme Court has held that the Delaware UTSA broadly preempts alternative tort claims as a matter of law at the pleading stage. *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) (affirming UTSA preemption at the pleading stage where the plaintiff's "common law claims seek civil remedies based solely on the alleged misappropriation of a trade secret; rejecting notion that early dismissal was "premature" on

---

[2] Plaintiff pleads a Delaware UTSA claim because Delaware law governs the parties' agreement. *See* Complaint, Exhibit 1 ¶ 22 ("This Agreement and the respective rights and obligations of the parties hereto shall be construed, interpreted, applied and governed in accordance with the laws of the State of Delaware without regard to choice of law principles."). Delaware courts generally apply the law of the contract to all resulting claims. *See AT&T Wireless Services v. Fed. Ins. Co.*, 2007 Del. Super. LEXIS 182, 2007 WL 1849056, at *3 (Del. Super. 2007).

plaintiff's faulty argument that it should be allowed to proceed with alternative tort claims should the UTSA claim fail). Delaware's highest court thus adopted the majority position on UTSA preemption, which holds that the UTSA extinguishes repetitive tort claims whether or not the plaintiff succeeds in establishing that a trade secret exits. Delaware's Court of Chancery affirmed this position in January 2021, when affirming the dismissal of an unjust enrichment claim:

> Thus, unless expressly carved-out, the DUTSA prohibits even alternatively pled common law claims that are based on the same wrongdoing as a trade secrets claim, notwithstanding that the alleged trade secret might later be deemed unworthy of statutory protection.

*See 250ok, Inc. v. Message Sys.*, 2021 Del. Ch. LEXIS 11, at *13 (De. Ch. Jan. 22, 2021); *see also Ethypharm S.A. France v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 434 (D. Del. 2005) (dismissing common law claims grounded in same facts as UTSA claim)*; Atl. Med. Specialists*, 2017 Del. Super. LEXIS 196, at *39 (explaining that preemption applies even where "claim does not meet the statutory definition of 'trade secret' under the Code").

These decisions are consistent with the text of the Delaware UTSA statute, which explicitly states that it "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." *See* Del. Code § 2007(a). The statute also highlights the only exceptions to the UTSA's preemption scheme, none of which apply here:

> This chapter does not affect: (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

6 Del. Code § 2007(b). In other words, the UTSA allows a party to bring a contract claim or the district attorney to bring a criminal trade secret proceeding, even if the plaintiff alleges a UTSA

claim. But a plaintiff cannot seek "other civil remedies"—including tort, restitutionary, or statutory claims—if they are "based upon misappropriation of a trade secret."

This conclusion is further reinforced by the legislative history of the Delaware UTSA. The Delaware legislature's professed purpose in adopting the UTSA was to "make uniform the law with respect to [trade secrets] among states enacting it." 6 Del. Code § 2008. As such, courts have concluded that Del. Code. § 2007 was "intended to preserve a single tort cause of action under state law for misappropriation as defined in Del. Code. § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991).

This insight is also buttressed by the commentary of the UTSA drafters, who explained that the uniform statute would serve as a substitute for the confusing array of common law claims which had, historically, been used to address what we today recognize as claims for trade secret misappropriation:

> The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law.[3]

Like other states, Delaware courts provide that legislative enactments supersede the common law where the legislature intended to do so. *See, e.g.*, *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1122 (Del. 2009). That intent is demonstrated by the UTSA's preemption clause. *See* 6 Del. Code § 2007(a).

---

[3] *See* Uniform Laws, UTSA Prefatory Note, at 5, available at <https://www.uniformlaws.org/viewdocument/final-act-128?CommunityKey=3a2538fb-e030-4e2d-a9e2-90373dc05792&tab=librarydocuments>.

Page 12 - MOTION TO DISMISS

Finally, Delaware's recognition of UTSA preemption is consistent with its holdings that other Uniform Acts, such as the Uniform Commercial Code, likewise block alternative, overlapping tort claims which seek to evade statutory requirements. *See, e.g., Cont'l Fin. Co., LLC v. TD Bank*, *N.A.*, 2018 Del. Super. LEXIS 1558, at *5 (Del. Super. Ct. Dec. 10, 2018) (Uniform Commercial Code preemption); *Blaskovitz v. Dover Fed. Credit Union*, 2017 Del. Super. LEXIS 291, at *7 (Del. Super. Ct. June 15, 2017) (same); *Mahaffy & Assocs. v. Long,* 2003 Del. Super. LEXIS 351, at *19 (Del. Super. Ct. Sep. 29, 2003) (same).

In short, for all of the foregoing reasons, a plaintiff suing under Delaware law has but one choice for a civil claim alleging misuse of confidential business information: the Delaware UTSA. Because all of Plaintiff's tort claims are founded on such alleged misuse, they are uniformly subject to dismissal.

### 2.     Plaintiff's Unjust Enrichment Claim Is UTSA-Preempted

To begin with, Plaintiff's unjust enrichment claim is plainly preempted by the Delaware UTSA because it duplicates Plaintiff's misappropriation claims. The UTSA unambiguously provides that claims in service of a "restitutionary" remedy are displaced by the statute. 6 Del. Code § 2007(a). Unjust enrichment—a claim that seeks restitution—is thus UTSA-preempted. Indeed, the statute preempts an unjust enrichment claim when it is grounded in the same facts or based on the same alleged wrongful conduct as the plaintiff's trade secrets misappropriation theory. *See, e.g., You Map, Inc. v. Snap Inc.*, 2021 U.S. Dist. LEXIS 5581, at *26 (D. Del. Jan. 12, 2021) (dismissing unjust enrichment claim because claim was grounded in same facts as misappropriation theory); *Ocimum Biosolutions (India) Ltd. v. LG Corp.*, 2021 U.S. Dist. LEXIS 45742, at *21 (D. Del. Mar. 11, 2021) (same); *250ok, Inc.,* 2021 Del. Ch. LEXIS *13 (same);

*Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 Del. Super. LEXIS 703, at *6 (Del. Super. Ct. Nov. 1, 2017) (same).

Plaintiff's unjust enrichment claim mirrors its Delaware UTSA claim: Plaintiff alleges that Defendant "impermissibly used the DAT load board and the data and information it contains to, among other things, create a competing load board and promote and develop its own pricing algorithm." Complaint ¶ 76. As part of its UTSA claim, Plaintiff makes the very same allegation – that Defendant "misappropriated and misused DAT's proprietary data to create its own load board and/or to develop and run its own algorithmic pricing formula . . . ." *See id.* ¶ 63. Because both claims are "grounded in the same facts," the Delaware UTSA preempts the unjust enrichment claim as a matter of law.

### 3. Plaintiff's Unfair Competition Claim Is UTSA-Preempted

Plaintiff's cause of action for unfair competition is likewise UTSA-preempted, in part (the other part of the claim is blocked for reasons discussed below). The Delaware UTSA extinguishes unfair competition claims when they are premised on the same facts as alleged trade secret misappropriation claims. *See Savor, Inc.*, 812 A.2d at 898 (affirming dismissal of "unfair competition and conspiracy claims" at the pleading stage); *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 Del. Super. LEXIS 1141, at *29 (Del. Super. Ct. Oct. 25, 2018) (dismissing unfair competition claim because "foundation" of claim same as that of a misappropriation claim).

Plaintiff alleges that Defendant wrongfully interfered with its business relationships by "intentionally creating and operating a competing load board" and by "misappropriating DAT's proprietary data and trade secrets in an intentional effort to take customers or freight postings away from DAT." *See* Complaint ¶ 80. The Delaware UTSA preempts this claim because it is grounded in the same facts that purportedly support the statutory claim.

#### 4. DAT's Tortious Interference Claim Is UTSA-Preempted

Finally, Plaintiff's tortious interference claim is also UTSA-preempted. The Delaware UTSA preempts such claims when they are based on misappropriation of confidential business information. *See You Map,* 2021 U.S. Dist. LEXIS 5581, at *24 (explaining that if alleged wrongful interference is Defendants' misappropriation, the claim is preempted by DUTSA).

Plaintiff alleges that Defendant intentionally interfered with Plaintiff's business opportunities by "intentionally creating and operating a competing load board" and by "misappropriating DAT's proprietary data and trade secrets . . . ." Complaint ¶ 84. As the "essence" of Plaintiff's tortious interference claim is misappropriation of trade secrets, it is preempted by the Delaware UTSA.

### D. Plaintiff's Claims Fail for Additional Reasons

Plaintiff's unjust enrichment, unfair competition, and tortious interference with prospective business opportunities claims also fail for reasons beyond UTSA preemption.

#### 1. Delaware Does Not Recognize a Tort Claim for Unjust Enrichment

At the outset, Plaintiff's claim for unjust enrichment fails because unjust enrichment does not exist as a tort in Delaware. *See Uppal v. Waters*, 2016 Del. Super. LEXIS 384, at *7 (Del. Super. Ct. Aug. 9, 2016) (explaining that [u]njust enrichment is not a tort"). More specifically, a claim for unjust enrichment is not available if there is a contract that governs the relationship between the parties that gives rise to the unjust enrichment claim. *See id.* (recognizing that "unjust enrichment is not available in a case with an express contract."); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) (explaining "[w]hen the complaint alleges an express, enforceable contract that controls the parties' relationship . . . a claim for unjust enrichment will be dismissed" (internal quotes omitted)); *BAE Sys. Info. & Elec. Sys. Integration*

*v. Lockheed Martin Corp.*, 2009 Del. Ch. LEXIS 17, at *26 (Feb. 3, 2009) (same); *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979) (explaining that "there can be no recovery under an unjust enrichment theory independent of [an existing contract]"). When a complaint alleges an express, enforceable contract that controls the parties' relationship, a claim for unjust enrichment must be dismissed. *See Bakerman v. Sidney Frank Importing Co.*, 2006 Del. Ch. LEXIS 180, at *67 (Del. Ch. Oct. 10, 2006) ; *BAE*, 2009 Del. Ch. LEXIS 17, at *29-30.

Plaintiff's Complaint describes a 2016 contract and subsequent agreements between the parties that ostensibly controls Defendant's access to Plaintiff's load board. Complaint ¶¶ 4-6; 75-76. Because it is undisputed that an express contract relating to the load board—the very basis of Plaintiff's unjust enrichment claim—exists, the claim for unjust enrichment must be dismissed.

### 2. Plaintiff's Unfair Competition and Tortious Interference Claims Are Defective

Plaintiff's unfair competition and tortious interference claims are also defective for reasons beyond UTSA preemption. First, Plaintiff fails to sufficiently plead that Defendant improperly interfered with Plaintiff's business relationships. Second, these claims are improperly duplicative of Plaintiff's breach of contract claims.

For both torts, the plaintiff must show a wrongful interference with the plaintiff's expectancy of a business relationship. *See Ethypharm S.A. Fr. v. Abbott Labs.*, 598 F. Supp. 2d 611, 618 (D. Del. 2009) (elements of unfair competition); *Mondero v. Lewes Surgical & Med. Assocs., P.A.*, 2018 U.S. Dist. LEXIS 52475, at *4 (D. Del. Mar. 29, 2018) (elements of tortious interference with prospective business relations); *You Map*, 2021 U.S. Dist. LEXIS 5581, at *24 (elements of both); *see also Preston Hollow Capital LLC v. Nuveen LLC*, 216 A.3d 1, at 15 n.96 (Del. Ch. 2019) (observing that the two torts are "essentially the same"). Both claims require a

Page 16 -   MOTION TO DISMISS

wrongful interference with the plaintiff's expectancy in a business relationship that had a reasonable probability of being consummated. To plead a reasonable probability of a business relationship, the plaintiff must "identif[y] a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm." *Agilent Techs., Inc. v. Kirkland*, 2009 Del. Ch. LEXIS 11, at *7 (Del. Ch. Jan. 20, 2009). The plaintiff need not name specific parties, but it must plead facts to allow the court to "reasonably infer that specific parties were involved." *Id.*; *see also GWO*, 2018 Del. Super. LEXIS 1141, at *30-31 ("'mere perception' of the prospect of a business relation or reliance on generalized allegations of harm will not suffice"); *You Map*, 2021 U.S. Dist. LEXIS 5581, at *24 (same); *CrewFacilities.com, LLC v. HotelEngine, Inc.*, 2021 U.S. Dist. LEXIS 119769, at *17-18 (D. Del. June 28, 2021) (same).

Plaintiff has not sufficiently alleged how Defendant wrongfully interfered with any business relationships. Nor has Plaintiff pointed to any specific party that Defendant dissuaded from doing business with Plaintiff. In fact, the Complaint supports the opposite. The only customer Plaintiff points to in support of its unfair competition and tortious interference claims is USA Truck. But Plaintiff does not argue that USA Truck has been dissuaded from doing business with Plaintiff. Quite the contrary. Plaintiff repeatedly states that USA Truck is "an existing customer of DAT." Compl. ¶¶ 40, 41, 79, 83.

Even if Plaintiff had alleged that Defendant's actions dissuaded USA Truck from doing business with Plaintiff, that alone would not suffice to state a claim of unfair competition or tortious interference. This is so because allegedly competing with Plaintiff is not "unfair" or "wrongful" in and of itself. *See CrewFacilities.com*, 2021 U.S. Dist. LEXIS 119769, at *13 (explaining that for a claim of unfair competition, interference is only actionable if wrongful);

*Kt4 v. Palantir Techs., Inc.*, 2018 Del. Super. LEXIS 365, at *14 (Del. Super. Ct. Aug. 22, 2018) (stating that plaintiff must allege wrongful conduct to support a claim for tortious interference with prospective economic advantage). Simply competing with someone is a privileged act of "economic self-interest." *Gillenardo v. Connor Broad. State Co.*, 1999 Del. Super. LEXIS 530, at *23-26 (Del. Super. Ct. Oct. 27, 1999); *Agilent Techs. v. Kirkland,* 2009 Del. Ch. LEXIS 11, at *27 (Del. Ch. Jan. 20, 2009) (noting that "claims for unfair competition and tortious interference must necessarily be balanced against a party's legitimate right to compete.").

Plaintiff may respond by arguing that it has alleged that Defendant cannot compete with it due to contract terms. *See* Complaint ¶¶ 28-34. But an alleged duty for Defendant not to compete that arises exclusively by contract and not by operation of law is not enough. Delaware's "bootstrapping rule" prohibits tort claims "based entirely on a duty deriving from [a] contract," as opposed to "a duty imposed by law separate and apart from the contractual obligations." *GWO*, 2018 Del. Super. LEXIS 1141, at *26 (dismissing conversion and unfair competition claims because "no duty independent of that from the contract" existed); *CrewFacilities*, 2021 U.S. Dist. LEXIS 119769, at *11-13 (dismissing tort claim for unfair competition because no duty would be breached without subcontract); *see also, e.g.*, *Uppal*, 2016 Del. Super. LEXIS 384 at *9 ("Under the Bootstrapping Doctrine, a plaintiff bringing a claim based upon breaches of contract must sue in contract, not in tort."); *Cornell Glasgow, LLC v. LA Grange Props., LLC*, 2012 Del. Super. LEXIS 266, at *23-24 (Del. Super. June 6, 2012) ("Delaware courts will not permit a plaintiff to 'bootstrap' a breach of contract claim into a tort claim merely by intoning the prima facie elements of the tort while telling the story of the defendant's failure to perform under the contract."). Here, like in *CrewFacilities*, Defendant's actions cannot constitute a breach of duty without the existence of the agreements between the

parties. Thus, Plaintiff's unfair competition and tortious interference claims are duplicative of its breach of contract claims and cannot be brought as tort claims. Even if they could, Plaintiff has failed to sufficiently plead both claims. Both should be dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court dismiss Counts 1-2 and 4-6 of Plaintiff's Complaint.

DATED: March 21, 2022.

STOEL RIVES LLP

*s/ Per A. Ramfjord*
PER A. RAMFJORD, OSB No. 934024
per.ramfjord@stoel.com
Telephone: (503) 224-3380

and

WILSON SONSINI GOODRICH & ROSATI
Amy Candido (*pro hac vice*)
acandido@wsgr.com
Charles Tait Graves (*pro hac vice*)
tgraves@wsgr.com
Jordan Jaffe (*pro hac vice*)
jjaffe@wsgr.com
Jordan Nelson (*pro hac vice*)
jordan.nelson@wsgr.com
1 Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000

Jason B Mollick (*pro hac vice*)
jmollick@wsgr.com
Praatika Prasad (*pro hac vice*)
pprasad@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800

Attorneys for Defendant