Marjorie A. Elken, OSB No. 073368
MAE@buckley-law.com
BUCKLEY LAW P.C.
5300 Meadows Road, Suite 200
Lake Oswego, OR 97035
Telephone: +1 503 620 8900
Facsimile: +1 503 620 4878

and

Damond R. Mace (admitted *pro hac vice*)
Sean L. McGrane (admitted *pro hac vice*)
Marissa Black (admitted *pro hac vice*)
damond.mace@squirepb.com
sean.mcgrane@squirepb.com
marissa.black@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: +1 216 479 8500
Facsimile: +1 216 479 8780

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAT SOLUTIONS, LLC, | Case No.: 3:22-CV-00088-IM |
| Plaintiff, | |
| v. | DAT SOLUTIONS, LLC'S OPPOSITION TO CONVOY, INC.'S MOTION TO DISMISS |
| CONVOY, INC., | |
| Defendant. | |

# INTRODUCTION

Plaintiff DAT Solutions, LLC ("DAT") and Defendant Convoy, Inc. ("Convoy") entered a contract in 2016, through which Convoy gained access for limited purposes to proprietary and confidential information involving DAT's "load board." Thereafter, Convoy used that proprietary and confidential information to set up its own competing load board, in contravention of federal law, state law, and numerous contractual provisions governing Convoy's access to DAT's load board and related information.

Convoy does not move to dismiss the breach of contract claim asserted by DAT, and cannot do so, given that Convoy's own executives effectively admitted to breaching the contract in a series of press releases and social media posts in 2021. *See* Compl. at ¶¶ 35-43. Convoy moves to dismiss the other five claims asserted by DAT, but Convoy's arguments fail for at least the following reasons.

First, DAT has properly asserted claims for violations of the federal Defend Trade Secrets Act (Count One) and the Delaware Uniform Trade Secrets Act (Count Two). Convoy argues that DAT failed to adequately plead "use of reasonable security measures to guard" the data and information contained on its load board. Courts construing these acts at the pleading stage, however, have made clear that "the 'reasonable efforts' requirement for a trade secret claim is not a high bar," *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 Del. Super LEXIS 1141, at *24 (Del. Super. Ct. Oct. 25, 2018), and that "the existence of a confidentiality agreement satisfies this requirement." *Alixpartners, LLP v. Benichou*, 250 A.3d 775, 783 (Del. Ch. 2019); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) (holding that, under the federal act, "confidentiality provisions constitute reasonable steps to maintain secrecy"). Here, DAT has adequately pled that the agreements between DAT and Convoy (which are attached

to the Complaint) contain confidentiality provisions that prohibited Convoy (and other DAT customers) from publicly disseminating or otherwise misusing information involving the DAT load board. *See* Compl. at ¶¶ 31-33, 50-51, 59-60 and Exs. 1-3. As many courts have recognized, these allegations are more than sufficient to satisfy the "reasonable security measures" element of Counts One and Two. In the alternative, if the Court believes there is any remaining issue on this, DAT should be granted leave to amend its Complaint to address the same.

<u>Second</u>, DAT's claims for unfair competition (Count Five), and tortious interference with business opportunities (Count Six) are not preempted by the Delaware Uniform Trade Secrets Act, as Convoy argues. This is because the claims are not dependent on the misappropriation of trade secrets, but are founded on Convoy's wrongful creation and operation of a competing load board. Because Convoy's creation and operation of a competing load board is alleged to be independently wrongful, <u>even if</u> Convoy did not misappropriate trade secrets, DAT's additional claims are not preempted by the Delaware act, which preempts only claims that are based exclusively on the misappropriation of trade secrets.

<u>Third</u>, DAT has adequately pled each element of its claims for unfair competition and tortious interference, and those claims should not be dismissed.

For these reasons, and those stated more fully below, Plaintiff DAT respectfully requests that Convoy's motion to dismiss be denied.[1]

---

[1] Because Convoy is not challenging the existence of a contract between itself and DAT, DAT will withdraw its claim for unjust enrichment, without prejudice, in an effort to streamline the claims at issue in this case.

PAGE 3 - DAT SOLUTIONS, LLC'S OPPOSITION TO MOTION TO DISMISS

## SUMMARY OF FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[2]

Plaintiff DAT was founded in Portland, Oregon, nearly 45 years ago, and now maintains the most recognized "freight market" in North America. Compl. ¶ 1. A "freight market" is commonly referred to as a "load board," and allows long-haul truckers and other carriers of freight to connect with entities that need to have freight shipped from one point to another. *Id.* In addition to facilitating "freight matching," the DAT load board also contains confidential and proprietary data and information relating to the trucking industry—including proprietary, algorithmic pricing data—that is only available on the DAT load board. *Id.* at 19. Customers can access the DAT load board through subscription agreements that contain confidentiality clauses and otherwise strictly limit a customer's use of the information available through the load board. *See* Ex. 1 to Compl. and *infra* at Section I(B).

Defendant Convoy is a venture capital firm founded in Seattle in 2015. *Id.* at ¶ 3. In 2016, Convoy entered a contract with DAT that allowed Convoy to access the DAT load board, subject to numerous confidentiality provisions and other restrictions on Convoy's ability to use the data accessed through the DAT load board. *Id.* at ¶ 4. The contract also expressly prohibited Convoy from creating and operating a competing load board, irrespective of whether Convoy used (or did not use) DAT's data in doing so. *Id.* at ¶ 30, Ex. 1 at § 4.

In the fall of 2021, however, Convoy publicly unveiled its new competing load board, called "Convoy for Brokers." *Id.* at ¶¶ 38-42. Convoy's executives boasted that they had been working on the competing load board for at least one year, during the same time Convoy was subject to the confidentiality and non-compete provisions of its contract with DAT. Convoy's

---

[2] The facts stated here are from the Complaint, and are to be taken as true and construed in the light most favorable to DAT at this stage of the case. *See Port of Kalama v. M/V SM Mumbai*, 2020 U.S. Dist. LEXIS 236549, at *2 (D. Or. Dec. 16, 2020) (Immergut, J.).

executives further stated that they had been working with, and taken business from, at least one existing customer of DAT, USA Truck, to build Convoy's competing load board. *Id.* at ¶¶ 38, 40.

DAT filed this action on January 19, 2022, asserting six causes of action against Convoy. Convoy filed its motion to dismiss on March 21, 2022. Convoy moves to dismiss Count One (violation of the Defend Trade Secrets of 2016) and Count Two (violation of the Delaware Uniform Trade Secrets Act) without prejudice. Convoy does not move to dismiss Count Three for breach of contract. Conoy moves to dismiss Count Four (Unjust Enrichment), Count Five (Unfair Competition) and Count Six (Tortious Interference) with prejudice.

## **LAW & ARGUMENT**

## **THE MOTION SHOULD BE DENIED**

As the Court knows, in analyzing a Rule 12(b)(6) motion to dismiss, the Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). "The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011). The factual allegations of the complaint need only "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). DAT's Complaint satisfies this standard.

I.  **DAT has adequately pled the reasonable security measures element of a misappropriation claim under both the DUTSA and the DTSA.**

   A.  **DAT has sufficiently pled that it has taken reasonable measures to protect the secrecy of its proprietary information.**

The first element of a claim under both the Delaware Uniform Trade Secrets Act ("DUTSA") and the federal Defend Trade Secrets Act ("DTSA") is the existence of a trade secret. *See Alixpartners, LLP v. Benichou*, 250 A.3d 775, 782 (Del. Ch. 2019) (Delaware claim). 18 U.S.C. § 1836(b)(1) (federal claim); *see also Yeiser Research & Dev., LLC v. Teknor Apex Co.*, 2018 U.S. Dist. LEXIS 141969, at *11 (S.D. Cal. Aug. 21, 2018) (analyzing elements of both DUTSA and DTSA). In order to establish this existence of a trade secret under both statutes, the plaintiff must plead that it took "reasonable measures" to keep the underlying information secret. 6 Del. C. § 2001(4); 18 U.S.C. § 1839(3)(A). Convoy's motion argues that DAT has failed to plead such reasonable measures; this is the only element of Counts One and Two that Convoy challenges.

"The 'reasonable efforts' requirement for a trade secret claim is not a high bar" at the pleadings stage. *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 Del. Super. LEXIS 1141, at *24 (Del. Super. Ct. Oct. 25, 2018). Indeed, courts in the Ninth Circuit have made clear that the reasonableness of security measures is a question of fact that typically is not appropriate for resolution on a motion to dismiss. *See Bus. Sols. LLC v. Ganatra*, 2020 U.S. Dist. LEXIS 48088, at *18 (C.D. Cal. Jan. 22, 2020) (denying summary judgment because reasonable measures element is a factual question); *Mastronardi Int'l Ltd. v. SunSelect Produce (Cal.), Inc.*, 2019 U.S. Dist. LEXIS 143934, at *29 (E.D. Cal. Aug. 22, 2019) (denying motion to dismiss because

reasonable measures element is question of fact); *LocalAdLink, Inc. v. AdzZoo, LLC*, 2009 U.S. Dist. LEXIS 142286, at *21 (D. Nev. Dec. 15, 2009) (same).

Under well-established federal and Delaware precedent, a plaintiff satisfies the reasonable measures pleading requirement by alleging that information was provided to a defendant or to other third parties pursuant to a confidentiality agreement. For example, in construing the federal DTSA, 18 U.S.C. § 1336 ("DTSA"), the Ninth Circuit Court of Appeals[3] held that "confidentiality provisions constitute reasonable steps to maintain secrecy." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020); *VBS Distribution, Inc. v. Nutrivita Labs., Inc.*, 811 F. App'x 1005, 1009 (9th Cir. 2020) ("Providing alleged trade secrets to third parties does not undermine a trade-secret claim, so long as the information was provided on an understanding of confidentiality.") (internal quotation marks and citation omitted). Similarly, "under Delaware law, the existence of a confidentiality agreement" satisfies the requirement to plead reasonable security measures. *Alixpartners*, 250 A.3d at 783; *see also GWO Litig.*, 2018 Del. Super. LEXIS 1141, at *24.

Under this well-settled law, DAT has sufficiently pled that it took reasonable security measures to keep the proprietary data and information on its load board secret. As set forth in DAT's Complaint and the documents attached to the Complaint, the National Account Agreement between DAT and Convoy authorized Convoy to access the DAT load board only for certain limited purposes, and contained strict confidentiality provisions. Compl. ¶ 28. For example, Section 13 of the National Account Agreement states, in relevant part:

---

[3] Ninth Circuit law applies to the DTSA claim because the law of the forum applies to federal statutory claims. *See HP Tuners, LLC v. Cannata*, 2019 U.S. Dist. LEXIS 137919, at *18 (D. Nev. Aug. 15, 2019) (applying Ninth Circuit law to federal statutory claims despite Illinois choice of law provision in contract).

> Information provided by DAT is proprietary to DAT. **Customer may not sell or share DAT load and truck information with third parties. Customer agrees to use the information provided by DAT solely for its own internal business purposes, and shall not reproduce, publish, resell or distribute such information for sale or commercial use.** Customer's use of DAT Products does not grant to the Customer ownership of any content, code, data or materials Customer may access through these Products.

Compl. Ex. 1 at § 13 (emphasis added). In addition, contemporaneous with the execution of the National Account Agreement, DAT and Convoy also entered into a Data Analytics Services Addendum, which states that Convoy "**shall treat all rate or market information provided by DAT as confidential**." Compl. Ex. 2 at § 3 (emphasis added).

By pleading the existence of these strict confidentiality provisions, and attaching the relevant contractual documents to its Complaint, DAT has readily cleared the low bar for pleading that it took reasonable measures to keep its load board and lane rate information secret. *See Brightstar Corp. v. PCS Wireless, LLC*, 2019 Del. Super. LEXIS 375, at *15 (Del. Super. Ct. Aug. 7, 2019) (plaintiff's "insistence on disclosing the pricing information only to those who agree to be bound by a confidentiality agreement demonstrates that [plaintiff] undertook sufficiently reasonable measures to keep the information secret.").

### B. DAT has taken reasonable measures to protect its trade secrets from the public through confidentiality provisions.

Convoy does not dispute that its access to the DAT load board was subject to the confidentiality provisions referenced above. In an effort to avoid the applicable law and artificially raise the bar for pleading "reasonable security measures," however, Convoy argues that the Complaint is deficient because DAT has not pled that it took reasonable measures to protect its confidential and proprietary information from "the trucking industry writ large." Motion to

Dismiss ("Mot.") at 8. This argument is wrong on the law and, even if it were not, would still be insufficient to warrant dismissal.

None of the cases cited by Convoy supports the argument that a plaintiff under the DUTSA or the DTSA must plead that its reasonable security measures applied to an "industry writ large." Indeed, that phrase does not appear in any of the cases cited by Convoy; instead, the phrase appears to be a novel pleading requirement that Convoy simply invented. Convoy's argument is based almost entirely on a case from the Second Circuit Court of Appeals, *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2022 U.S. App. LEXIS 6070 (2d Cir. N.Y. Mar. 9, 2022). *Turret Labs*, however, does not support Convoy's novel "industry writ large" pleading requirement, and in fact militates <u>against</u> dismissal here.

In *Turret Labs*, the plaintiff provided a third party, Lufthansa, with access to plaintiff's software system. As *Turret Labs* repeatedly emphasizes, and in stark contrast to the facts pled here, the plaintiff gave Lufthansa access to the software <u>without binding Lufthansa to any confidentiality agreements or otherwise limiting or prohibiting Lufthansa's use of the software</u>. *Id.* at *6-7. In fact, the plaintiff's agreement with Lufthansa specifically authorized Lufthansa to "grant access to other users." *Id.* at *3. Lufthansa then granted access to the plaintiff's software to the defendant in the case, CargoSprint, LLC. Plaintiff subsequently sued CargoSprint under the federal DTSA, arguing it had misappropriated trade secrets from plaintiff's software.

The court dismissed the plaintiff's claims, but not because the plaintiff had failed to plead reasonable security measures as to the "industry writ large" (that phrase is not in the opinion). Rather, the court dismissed the claims because—unlike here—the plaintiff had provided the information to Lufthansa (and, indirectly, to the defendant) without requiring Lufthansa or the defendant to agree to any confidentiality agreements or similar restrictions. As the court held:

"Notably absent from Turret Labs' SAC is any specific allegation that Lufthansa or any other user of Dock EnRoll was required to keep Turret Labs' information confidential. Turret Labs does not plead that it had confidentiality or nondisclosure agreements in place with Lufthansa or other users of Dock EnRoll." *Id.* at *6. *Turret Labs* is inapposite and readily distinguishable: here, DAT expressly pleads that it <u>did</u> have confidentiality and nondisclosure agreements in place with Convoy, but then Convoy went on to misuse the data and information anyway, in violation of the governing confidentiality provisions. In short, *Turret Labs* does not support dismissal, and does not support Convoy's argument that a plaintiff must plead reasonable security measures as to the "industry writ large" under either the federal or state acts.[4]

Moreover, even if there were such a pleading requirement, DAT's claims would still survive dismissal, because the Complaint and the documents attached to the Complaint show that DAT has taken sufficient reasonable measures to protect the secrecy of its information from the industry and the public through the widespread use of confidentiality provisions and other reasonable protections.[5] Convoy's argument appears primarily to be that, before 2001, some of DAT's load board information was publicly viewable at truck stops and therefore cannot constitute a trade secret. *See* Mot. at 8. This argument, however, simply ignores the twenty-year period between 2001 and 2022, when (as pled in the Complaint) the information was no longer available

---

[4] For similar reasons, *MHS Capital LLC v. Goggin*, 2018 Del. Ch. LEXIS 151 (Del. Ch. May 10, 2018) is inapposite because (as in *Turret Labs*) the plaintiff in that case did not allege the existence of any confidentiality agreement governing its provision of information to the defendant.

[5] The sample screenshot of DAT's load board interface in the Complaint, with all proprietary information **redacted**, does not demonstrate the "public nature" of the interface, as Convoy suggests. *See* Compl. ¶ 45; Mot. at 9.

"on bulletin boards," but was accessible only through subscriptions with strict confidentiality clauses. Compl. ¶¶ 17-23, 50-51, 59-60.

Similarly, Convoy's factual assertion that DAT has not taken reasonable measures to protect its load board from the "trucking industry writ large" also fails. DAT's National Account Agreement, on its face, is a template agreement used by other DAT customers as well, which would bind those customers to the same confidentiality and nondisclosure obligations as Convoy. Compl., Ex. 1. Moreover, all of DAT's customers—even those that do not sign DAT's National Account Agreement—are subject to confidentiality clauses, as evidenced by DAT's publicly available Terms & Conditions, which govern the use of DAT's web sites, mobile applications, and service offerings. *See* DAT Solutions, LLC Terms & Conditions, available at https://www.dat.com/web/terms-and-conditions.[6] By accessing *any* of DAT's content, material, or services, a user consents and agrees that "any and all of Our Information is confidential and shall be our sole and exclusive intellectual property and proprietary information . . . Any disclosure of Our Information to a third party, specifically including a direct competitor, is strictly prohibited and will be vigorously challenged in a court of law." *Id.* at § 4.

For all these reasons, DAT respectfully submits that it has adequately pled its misappropriation claims under both the DTSA and the DUTSA (Counts One and Two), and Convoy's motion to dismiss should be denied.[7]

---

[6] Information that is publicly available from websites may be considered on a motion to dismiss. *See Soja v. Medtronic, Inc.*, 2019 U.S. Dist. LEXIS 95557, at *4 (E.D. Cal. June 6, 2019); *Rock the Vote v. Trump*, 2020 U.S. Dist. LEXIS 202069, at *12 n.2 (N.D. Cal. Oct. 29, 2020).

[7] Convoy only seeks a dismissal without prejudice of Counts One and Two, apparently acknowledging that any alleged defect may be readily cured with amendment. *See* Mot. at 2, 4. Therefore, if the Court is inclined to grant Convoy's motion to dismiss with respect to Counts One and Two, DAT respectfully requests leave to replead those claims to address any perceived pleading issues.

PAGE 11 - DAT SOLUTIONS, LLC'S OPPOSITION TO MOTION TO DISMISS

## II. DUTSA does not preempt DAT's additional claims.

Convoy next argues that Counts Five (unfair competition) and Six (tortious interference) should be dismissed because each claim is preempted by the DUTSA. Convoy's argument fails for several reasons.

DUTSA does not preempt Counts Five and Six because they are grounded on factual allegations that are independent of DAT's misappropriation-related allegations—namely, allegations relating to Convoy's wrongful establishment of a competing load board. These allegations are sufficient to state claims for unfair competition and tortious interference <u>even if</u> Convoy did not misappropriate trade secrets. Therefore, as explained below, those counts are not preempted by DUTSA.

DUTSA does not displace contractual remedies or "[o]ther civil remedies that are not based upon misappropriation of a trade secret." 6 Del. Ch. § 2007. Thus, DUTSA's tort law preemption applies only where the claims are "grounded in the same facts which purportedly support the misappropriation of trade secrets claims." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010). Accordingly, courts in Delaware have declined to dismiss claims as preempted when those claims are premised on allegations that the defendant both misappropriated trade secrets and, separately, engaged in some other form of wrongful conduct.

For example, in *Accenture Glob. Servs. GmbH v. Guidewire Software, Inc.*, the United States District Court for the District of Delaware held that Accenture's tortious interference claim was not DUTSA preempted because Accenture could establish a tortious interference claim without proving its trade secrets claim. 631 F. Supp. 2d 504, 508-09 (D. Del. 2009). Accenture was a computer software and consulting services company that developed trade secrets with respect to its design, coding, and implementation of its claims management system. *Id.* at 506.

Guidewire created a competing claims management product that closely resembled Accenture's product—including those features considered trade secrets—and began interfering with Accenture's current client contracts. *Id.* at 507. The Court explained that, "[b]ecause plaintiffs can make out a tortious interference claim without proving a trade secrets claim, the court declines to declare at this stage that the tortious interference claim is preempted by DUTSA." *Id.* at 508; *see also Ethypharm S.A. France v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 435 (D. Del. 2005) ("While plaintiffs have not yet fully developed the [tortious interference] claim at this early stage of the proceedings, it is too early to dismiss the claim as preempted.").

Here, like in *Accenture*, the same facts are not required to establish the elements of DAT's misappropriation and tort claims, and therefore the latter claims are not preempted. To prove a misappropriation claim, a plaintiff must show that the information in question qualifies as a trade secret under 6 Del. C. § 2001(4). No such showing is required to prove DAT's tort claims, which are premised on Convoy intentionally "creating and operating a competing load board that has taken and/or will take customers, or their specific freight postings, away from DAT." Compl. ¶¶ 80, 84. Accordingly, DAT's tortious interference and unfair competition claims are cognizable whether or not the competing load board uses (or does not use) trade secrets. *See Beard*, 8 A.3d at 602 (breach of fiduciary duty claim not preempted because "that claim can be premised on the misuse of a plaintiff's confidential information, even if that information does not rise to the level of a trade secret.").[8]

---

[8] The two cases upon which Convoy primarily relies in support of its preemption argument, *Savor* and *250ok,* are distinguishable because those cases were based entirely on misappropriation, unlike here. *See Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) ("Savor's common law claims seek civil remedies based solely on the alleged misappropriation of a trade secret."); *250ok, Inc. v. Message Sys.*, 2021 Del. Ch. LEXIS 11, *13 (Del. Ch. Jan. 22, 2021) (noting that 250ok's common law claims rested on misappropriating 250ok's trade secret information).

Separately, Delaware courts have held that, as a matter of law, tortious interference claims are not subject to preemption under DUTSA, even if those claims are based exclusively on the misappropriation of trade secrets. *See* 6 Del. C. § 2007(b)(1) ("This chapter does not affect . . . Contractual remedies, whether or not based upon misappropriation of a trade secret[.]"); *Atl. Med. Specialists, Ltd. Liab. Co. v. Gastroenterology Assocs., P.A.*, 2017 Del. Super. LEXIS 196, at *40-41 (Super. Ct. Apr. 20, 2017). Accordingly, DAT's tortious interference claim should not be dismissed on preemption grounds.

For all these reasons, Convoy's motion to dismiss Counts Five and Six as preempted should be denied.

### III. DAT has adequately pled the improper interference element of its unfair competition and tortious interference claims.

DAT has adequately pled that Convoy wrongfully interfered with its business relationship with USA Truck, and therefore its unfair competition and tortious interference claims should not be dismissed. The elements of an unfair competition claim under Delaware law are: (1) that the plaintiff has a reasonable expectancy of entering a valid business relationship; (2) with which the defendant wrongfully interferes; (3) thereby defeating the plaintiff's legitimate expectancy; and (4) causing the plaintiff harm. *Ethypharm S.A. v. Abbott Labs.*, 598 F. Supp. 2d 611, 618 (D. Del. 2009) (denying motion to dismiss unfair competition and tortious interference claims). Similarly, the elements of a tortious interference with a business relationship claim are: (1) the existence of a valid business relationship or an expectancy of one; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) damage to the party whose relationship or expectancy has been disrupted. *Id.* at 619.

Convoy contends that DAT's tortious interference and unfair competition claims fail for the same two reasons: (1) DAT has not identified any specific party that Convoy dissuaded from doing business with DAT; and (2) DAT has not sufficiently alleged how Convoy wrongfully interfered with any business relationships. Mot. at 17. Both of these arguments fail.

First, Convoy's argument that DAT's tortious interference and unfair competition claims fail because DAT has not identified a specific party that Convoy dissuaded from doing business with DAT is flatly contradicted by the applicable law, and the Complaint. As Convoy concedes, DAT does <u>not</u> need to name specific parties in order to state either claim. *See* Mot. at 17 ("The plaintiff need not name specific parties[.]"). DAT, however, <u>has</u> identified a specific party—USA Truck—that Convoy has dissuaded from doing business with DAT. *See id*. Indeed, both Convoy and USA Truck have admitted that publicly. Compl. Exs. 4 and 5. For both these reasons, this argument fails.

Second, DAT has sufficiently alleged how Convoy has wrongfully interfered with its business relationships. DAT alleges that its existing customer, USA Truck, "confirmed that it had been posting freight to Convoy's competing load board during the course of the prior year," instead of DAT's. Compl. ¶ 40. This is exactly the sort of conduct that Delaware courts have found rises to the level of wrongful interference. *Kt4 v. Palantir Techs., Inc.*, 2018 Del. Super. LEXIS 365, at *18 (Super. Ct. Aug. 22, 2018) (dissuading current customer to do business with plaintiff rose to the level of wrongful interference). Moreover, interference with an existing business relationship is sufficient to state claims for tortious interference and unfair competition. *See, e.g.*, *Ethypharm S.A.*, 598 F. Supp. 2d at 618 (existence of valid business relationship sufficient to establish element of tortious interference claim). Thus, DAT has adequately alleged this element of its tortious interference and unfair competition claims.

Indeed, almost every case Convoy cites involved the court *denying* a motion to dismiss the plaintiff's tortious interference and/or unfair competition claims because the plaintiff had articulated facts corresponding to the essential elements of each claim, as DAT has done here. *See Ethypharm S.A.*, 598 F. Supp. 2d at 618 (denying motion to dismiss unfair competition and tortious interference claims); *Preston Hollow Capital LLC v. Nuveen LLC*, 216 A.3d 1, 4 (Del. Ch. 2019) (noting that the court had already denied the motion to dismiss the tortious interference claim); *Kt4*, 2018 Del. Super. LEXIS 365, at *4 (denying motion to dismiss tortious interference claim); *Agilent Techs. v. Kirkland*, 2009 Del. Ch. LEXIS 11, at *35 (Del. Ch. Jan. 20, 2009) (denying motion to dismiss unfair competition and tortious interference claims). The same result should occur here.

Further, DAT's unfair competition and tortious interference claims are not based solely on Convoy's breach of its agreement with DAT—which DAT pled as a separate breach of contract claim—and therefore Convoy's "bootstrapping rule" argument fails. Convoy points to no allegations in either claim to the contrary. In fact, the Complaint does include allegations of independent wrongdoing by Convoy separate from its breach of the contract. *See, e.g.*, Compl. ¶¶ 35-43. Convoy's executive publicly announced that Convoy had been developing a competing load board over the past year after having expressly denied the same to DAT. *Id.* The existence of a contract between DAT and Convoy does not prevent DAT from asserting claims against Convoy for its wrongful interference with DAT's business relationships with third parties. *See Kt4*, 2018 Del. Super. LEXIS 365, at *19 (defendant's use of its contractual agreement with plaintiff to gain an unfair advantage when dealing with third parties was sufficient to state a tortious interference claim).

Moreover, the bootstrapping doctrine only applies to claims "based entirely on a duty deriving from the contract," not those based on "a duty imposed by law separate and apart from the contractual obligations." *GWO Litig. Trust*, 2018 Del. Super. LEXIS 1141 at *26. DAT's unfair competition and tortious interference claims are based on the common law duty "not to use wrongful means to dissuade a party from entering or continuing a business relationship"—which is independent from any contractual obligation. *See CrewFacilities.com LLC v. Hotel Engine, LLC*, 2021 U.S. Dist. LEXIS 119769, *12 (D. Del. June 28, 2021). For example, in *CrewFacilities*, the District of Delaware determined that both the breach of contract and tortious interference claims survived dismissal because the obligations imposed by the contract and by the common law were distinct. *Id.* The same result should apply here because Convoy had an independent duty not to dissuade DAT's customers from continuing to do business with DAT.

Accordingly, Convoy's motion to dismiss DAT's tortious interference and unfair competition claims should be denied.

## CONCLUSION

For the foregoing reasons, Convoy's motion to dismiss should be denied.

DATED this 29th day of April 2022.

        BUCKLEY LAW P.C.

        By: */s/ Marjorie A. Elken*
            Marjorie A. Elken, OSB No. 073368
            mae@buckley-law.com
            5300 Meadows Road, Suite 200
            Lake Oswego, OR 97035
            Telephone: 503-620-8900
            Facsimile: 503-620-4878

            Damond R. Mace, pro hac vice
            Sean L. McGrane, pro hac vice
            Marissa Black, pro hac vice
            damond.mace@squirepb.com

sean.mcgrane@squirepb.com
marissa.black@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Telephone: 216-479-8500
Facsimile: 216-479-8780

*Attorneys for Plaintiff DAT Solutions, LLC*

# CERTIFICATE OF SERVICE

I certify that I served or caused to be served a full, true, and complete copy of the foregoing

**DAT SOLUTIONS, LLC'S OPPOSITION TO CONVOY, INC.'S MOTION TO DISMISS**

on the party or parties listed below as follows:

| | |
|---|---|
| Per A. Ramfjord<br>STOEL RIVES LLP<br>760 SW Ninth Avenue, Suite 3000<br>Portland, OR 97205<br>per.ramfjord@stoel.com<br><br>*Attorneys for Defendant*<br><br>Jason B. Mollick<br>Praatika Prasad<br>WILSON SONSINI GOODRICH & ROSATI<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019<br>jmollick@wsgr.com<br>pprasad@wsgr.com<br><br>*Attorneys for Defendant* | Amy H. Candido<br>Charles Tait Graves<br>Jordan R. Jaffe<br>Jordan A. Nelson<br>WILSON SONSINI GOODRICH & ROSATI<br>One Market Plaza<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105<br>acandido@wsgr.com<br>tgraves@wsgr.com<br>jjaffe@wsgr.com<br>jordan.nelson@wsgr.com<br><br>*Attorneys for Defendant* |

☐ by **MAILING** in a sealed, postage-paid envelope, addressed as shown above, and deposited with the U.S. Postal Service at Lake Oswego, Oregon, on the date set forth below;

☒ by **EMAILING** to the email address set forth above on the date set forth below;

☒ by **ELECTRONIC SERVICE** through the CM/ECF system, on the date set forth below.

DATED: April 29, 2022.

                                                  BUCKLEY LAW P.C.

                                                By: */s/ Marjorie A. Elken*
                                                    Marjorie A. Elken, OSB No. 073368
                                                    mae@buckley-law.com
                                                    *Attorneys for Plaintiff*