

## National Account Agreement

Customer ("Customer"):   Convoy, Inc.   Effective Date:   11/7/2018 | 4:08 PM PST
Address:  1700 7th Ave Ste 116 #287, Seattle, WA 98101
Attn:  Brian Kreiner and Michael Carroll

1. **PROGRAM OFFERINGS**
DAT will issue a National Account Agreement Product and Pricing Supplement ("Supplement") to this Agreement detailing DAT's offerings and pricing, which is incorporated herein. After the Initial Term, DAT may change the Supplement or issue a new Supplement upon 30 days written notice to Customer. DAT's Global Privacy Policy at http://www.dat.com/Support/Privacy-Policy.aspx and any attached Addenda are also incorporated herein.
2. **TERM/TERMINATION**
    A. **Term**. The initial term of this Agreement ("Initial Term") shall commence on the Effective Date and shall continue for **36** months, unless terminated sooner as provided for herein. Thereafter, subject to the provisions herein, the Agreement shall automatically renew and extend for additional twelve (12) month periods, ("Renewal Terms"), on each anniversary of the Effective Date, unless written notice is given by either party not less than thirty (30) days prior to the expiration of the current term.  With each automatic renewal, DAT may increase subscription and/or seat pricing by not more than 7% of the prior period's rate.
    B. **Events of Termination.** This Agreement may be terminated by either party in the event that the other party breaches the Agreement and fails to cure such breach within 10 days of written notice thereof.  DAT reserves to right to suspend Customer's access to any DAT Product after such notice period.  DAT may, upon 30 days' notice, initiate re-negotiations of the contract or opt out of the Agreement in the event Customer's volume of load or truck postings falls below the prior 13 month average by more than 30%.
    C. **Obligations Upon Termination/Survival**.  Upon termination or expiration of this Agreement, Customer shall be entitled to retain any DAT information, data, documentation or materials for which Customer already paid or already received. In the event the Agreement is terminated, with the exception of termination due to Customer's breach, Customer shall be given the option to make payment for any remaining months in the current twelve month term and such data, information or documentation from such term shall be provided to and retained by Customer.  Termination or expiration of this Agreement shall not relieve either party of any accrued payment obligations, or any other obligation under this Agreement that is of an ongoing nature.
3. **APPROPRIATE USE**
    A. **Freight Matching Products.** Customer warrants that Customer is and will be at all times a bona fide shipper, freight broker, 3PL, freight forwarder, intermodal or rail company, or motor carrier of a legal age to operate as such and to enter into this Agreement. Customer shall not initially or continually represent itself as operating under the authority of any third-party without the express permission from such. Customer shall not: (a) enter any transaction to broker or transport freight or commodities without the appropriate authority and/or level of insurance coverage or bond, (b) transport freight outside the geographic bounds of Customer's authority; and/or (c) transport commodities Customer is not authorized to transport.
    B. **Access.** Customer shall not: (a) allow non-registered users access to DAT's Products; (b) provide Customer's password to any non-registered user; and/or (c) share any information from DAT's Products with any non-registered users.
    C. **Ethical Use**. Customer shall conduct its business in an ethical manner and shall not engage in any illegal, deceptive, misleading or fraudulent practices.
    D. **Export Restrictions & Compliance with Laws**. The DAT Products may refer to some products or programs that are not available worldwide without specifically identifying that the offers are geographically limited. DAT's reference to such products or programs does not imply that DAT intends to offer such programs or programs in all countries or locations. Customer may not access, download, or use the Products or any material provided by DAT in violation of U.S. export laws or regulations. Customer and DAT agree to comply fully with all applicable laws, rules, or regulations, domestic or foreign, including but not limited to the laws and regulations concerning import and export of goods, the Foreign Corrupt Practices Act and other laws prohibiting bribery, nondiscrimination, forced or involuntary labor, and equal opportunity in employment.
    E. **Downloading and Exporting**.  All information downloaded or exported from DAT's Products is intended for use by Customer or the employee performing the download and shall not be distributed to any other users or locations.
    F. **Business Locations.** All seats provided under Customer's office subscription are for use solely by Customer's employees or agents.  Customer's subscription does not cover Customer's employees or agents that are employed at an office location not included in Customer's office subscription. A separate subscription is required for each business location used by Customer's agents and employees.
4. **NON-COMPETE AS A LOAD BOARD**
Customer represents and warrants that its use of DAT's Products:  (a) is solely for Customer's commercial purposes related to its movement of freight and that Customer shall not reproduce, republish, resell or distribute such information in any format, in whole or in part, for sale or commercial use by third parties.  During the Term, Customer may not create a load board wherein they aggregate other brokers' loads with the intent of competing with DAT. Nothing herein shall prevent Customer from co-brokering with other brokers on such load boards. Customer warrants that Customer's access or use of DAT's Products is not for the purpose of directly competing with DAT.  If DAT deems Customer's activity or use of the Products to be detrimental to the DAT network DAT reserves the right, at their sole discretion, to immediately suspend service and may terminate this Agreement upon 30 days' notice.  Such early termination by DAT of this Agreement

shall release Customer from payment obligations remaining in the then-current Term. Customer agrees that any violation of this Section is a breach of this Agreement and may result in immediate termination of Customer registration and access to the Products

**5. NEW/DISCONTINUED PRODUCTS**
From time to time, DAT may offer new Products and/or find it necessary to discontinue a Product. New Product offerings may be found at www.DAT.com. DAT shall use reasonable commercial efforts to give Customer no less than 60 days written notice of Product discontinuance and outline the transition options that are available.

**6. FEES & PAYMENTS**
DAT will invoice Customer on a monthly basis for all Products/Services, and all amounts due under such invoice shall be payable within thirty (30) days after the date of invoice. Customer shall pay all fees at the current rates in accordance with the current DAT payment policies, which may be modified from time to time at the sole discretion of DAT, with advance written notice to Customer, customarily by written notice specified on Customer's invoice. Customer is responsible for all taxes. DAT reserves the right to hold Customer responsible for reasonable costs associated with collection, including but not limited to collection agency/attorney fees.
Any billing dispute must be presented in writing within 30 days of invoice date to Customer Financial Services Department, DAT Solutions, LLC, 8405 SW Nimbus Ave, Beaverton, OR 97008, or via FAX at 503.672.5108, or by email to billingservices@dat.com.

**7. DISCLAIMERS**
  A. **Information Disclaimer.** While DAT endeavors to be as accurate and timely as reasonably possible, DAT makes no warranty or guarantee concerning the accuracy, reliability, completeness or suitability of the information. DAT provides all information AS IS. DAT does not make safety determinations; rather DAT reports safety data using government data including, but not limited to, FMCSA records. DAT's Products contain aggregate content DAT receives from government and commercial sources customarily determined to be reliable. DAT endeavors to keep this information as updated as possible, however, Customer must make its own determination as to safety, authority and business practices. Use of DAT's Products is entirely at Customer's sole discretion and at Customer's OWN RISK. DAT provides a venue for brokers, carriers and shippers to meet to offer, sell, and buy products/services. DAT is not involved in the actual transaction between buyer and seller. While DAT may help facilitate, it has no control over and does not guarantee safety or legality. It is Customer's SOLE RESPONSIBILITY, as a user of DAT's products/services, to check the credentials including, but not limited to, the safety and authority record of any party.
  B. **Warranty Disclaimer.** TO THE FULLEST EXTENT ALLOWED BY LAW, DAT PROVIDES PRODUCTS WITHOUT WARRANTY OF ANY KIND. DAT DISCLAIMS ANY AND ALL WARRANTIES OR REPRESENTATIONS WITH RESPECT TO THE PRODUCTS PROVIDED HEREUNDER, WHETHER EXPRESS OR IMPLIED, ARISING BY LAW, CUSTOM, ORAL OR WRITTEN STATEMENTS, OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, FREEDOM OF INTERFERENCE WITH ENJOYMENT, QUALITY, ACCURACY, COMPLETENESS, AND/OR FITNESS OF RESULTING WORK PRODUCT. DAT MAKES NO WARRANTY, EXPRESS OR IMPLIED, THAT ITS PRODUCTS WILL GENERATE CERTAIN RESULTS, WORK IN COMBINATION WITH OTHER COMPONENTS OR AS AN INTEGRATED SYSTEM, OR WILL FULFILL ANY OF CUSTOMER'S PARTICULAR PURPOSES. DAT MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE DESIGN, SALE, INSTALLATION OR USE OF ITS PRODUCTS.

**8. LIMITATION OF LIABILITY**
In no event shall DAT be liable for any direct, special, indirect, incidental, consequential, extra-contractual, or punitive damages of any kind whatsoever including, without limitation, lost revenues or lost profits regardless of legal theory, whether or not DAT has been advised of the possibility of such damages, and even if the remedies otherwise available fail their essential purpose. DAT's sole obligation and exclusive responsibility in the event of any non-conformity, defect or error in the Products shall be to take reasonable corrective actions upon discovery of the problem, and in no event shall DAT and/or its third party information provider's cumulative liability under this agreement exceed two times the total fees paid by Customer to DAT during the preceding twelve (12) month period. . Some jurisdictions may not permit the exclusion or limitation of liability for consequential or incidental damages, and, as such, DAT's liability shall be limited to the greatest extent permitted by law.

**9. CONFIDENTIALITY**
Customer shall not disclose to any third party the terms and conditions of this Agreement, and Supplement, and any addenda as well as any DAT Confidential Information. The term "Confidential Information" shall mean all non-public information that DAT designates as being confidential, or which, under the circumstances of disclosure, ought to be treated as confidential.

**10. ASSIGNMENT**
This contract is not assignable by Customer without DAT's prior written consent, which shall not be unreasonably withheld. Notwithstanding, Customer may assign this Agreement to any successors to its business without consent; unless such successor is a direct competitor of DAT in which case, DAT reserves the right to opt out of the Agreement at the time of assignment.

**11. INTERACTION WITH THE PRODUCTS**
By interacting with the Products, transmitting any information, material, suggestions, or other content (collectively, "User Content") to DAT, Customer automatically grants DAT the royalty-free, perpetual right and license to use, reproduce, modify, publish, create derivative works from, and distribute such User Content (in whole or in part) in any manner DAT deems reasonable in its sole and independent judgment. Notwithstanding the foregoing, DAT shall not create, distribute, share, or otherwise use User Content in any way that identifies or compromises any of Customer's or Customer's client's confidential information. DAT shall de-identify and anonymize any User Content DAT uses. Further, DAT is free to use any ideas, concepts, know-how, techniques, and suggestions contained in any communications Customer sends to DAT for any purpose whatever, including, but not limited to, creating and marketing products, providing Customer with a better user experience, and to improve the quality of DAT Products.

**12. ACCOUNT INFORMATION**

By signature below, Customer authorizes DAT to include data about Customer in the DAT Directory. This directory includes publicly available data about Customer, such as Customer's DOT profile information, as well as data Customer provides to DAT regarding its company and operations. All DAT Directory information may be viewed by active DAT subscribers.

### 13. COPYRIGHT/TRADEMARKS/ADVERTISMENTS

Information provided by DAT is proprietary to DAT. Customer may not sell or share DAT load and truck information with third parties. Customer agrees to use the information provided by DAT solely for its own internal business purposes, and shall not to reproduce, publish, resell or distribute such information for sale or commercial use. Customer's use of DAT Products does not grant to the Customer ownership of any content, code, data or materials Customer may access through these Products.

Customer acknowledges that DAT is the sole owner of DAT's corporate name, as well as any other trade names, trademarks, service marks, logos, designs or marks that DAT has adopted or may adopt or use with respect to the Products or in connection with its business (collectively, "Trademarks"). Customer shall not alter, remove or cover up any Trademarks appearing on or affixed to the Products, or on any documentation, literature, or marketing materials relating thereto. Nothing contained on any DAT Product/Service should be construed as granting, by implication, any license or right to use any trademark without DAT's express authorization, and any misuse of Trademarks is strictly prohibited.

Customer shall not publish, display, distribute or otherwise use any advertising, sales brochures, promotional literature, press releases or other items or materials that contain or make any representations or warranties with respect to the Products that are inconsistent with those made by DAT, or which are untrue, deceptive or misleading in any respect.

### 14. SOFTWARE

Customer is granted a non-exclusive, non-transferable, royalty-free license only for Customer's use of DAT's software. Under this license Customer may: (a) use DAT's software; (b) copy DAT's software into any machine-readable or printed form for back up in support of Customer's use of DAT's software on the DAT's system provided; and (c) create one additional copy of the software for archival purposes only.

### 15. MOBILE SERVICES

DAT may provide certain Products via Customer's mobile phone or other device if Customer has subscribed to them (collectively, the "Mobile Services"). Customer's mobile carrier's normal messaging, data, and other rates and fees may apply to Customer's use of the Mobile Services. In addition, downloading, installing, or using certain Mobile Services may be prohibited or restricted by Customer's mobile carrier, and not all Mobile Services may work with all carriers or devices. Customer is responsible for checking with Customer's mobile carrier to determine if the Mobile Services are available for Customer's mobile devices, what restrictions, if any, may be applicable to Customer's use of the Mobile Services and how much they will cost Customer. By using the Mobile Services, Customer agrees that DAT may communicate with Customer by SMS, MMS or other electronic means to Customer's mobile device and that certain information about Customer's usage of the Mobile Services may be communicated to DAT. In the event Customer changes or deactivates Customer's mobile telephone number, Customer agrees to promptly update Customer's mobile subscription account information with DAT.

### 16. PUBLIC FORUMS

DAT may make messaging services, chat services, bulletin boards, message boards, blogs and other such forums and services available on or through its websites. In addition to any other rules or regulations that DAT may post, Customer shall not upload, post, transmit, or publish through any website or any service or feature made available on or through DAT's websites, any materials which: (a) restrict or inhibit any other user from using and enjoying the websites or the websites' services; (b) are fraudulent, unlawful, threatening, abusive, defamatory, obscene, or offensive,; (c) constitute or encourage conduct that is criminal in nature or may give rise to civil liability, or violate any law; (d) infringe the rights of third parties including, without limitation, intellectual property rights; (e) contain any malware, (f) contain embedded links, advertising; and/or (g) constitute or contain false or misleading statements. Customer shall not impersonate any other person or entity, whether actual or fictitious, including anyone from DAT. Customer shall not offer to buy or sell any product or service on or through Customer's comments submitted to DAT's forums.

### 17. TAXES

Quoted prices are exclusive of all sales, use, excise, or other taxes or charges payable with respect to the sale, purchase, or use of any of the Products. All government charges upon the Products tendered by this Agreement shall be paid by Customer or, in lieu thereof, Customer shall furnish DAT with a tax exemption certificate acceptable to the authority imposing the tax on DAT. However, Customer will immediately reimburse DAT for any taxes incurred by it on the sale of Products to the extent such tax exemption certificate proves to be insufficient to the applicable taxing authority for any reason.

### 18. SOLICITATION OF EMPLOYEES

During the term of this Agreement and one (1) year thereafter, DAT or Customer will not solicit, induce or attempt to induce any employees of the other to terminate employment with the other. However, generalized searches for employees (such as advertisements, use of recruiters, job fairs) not specifically targeted at DAT or Customer shall not be prohibited.

### 19. INDEMNIFICATION

Customer shall indemnify, defend, and hold harmless DAT and its directors, officers, employees, agents, and representatives (collectively, "Indemnitees") , from and against any costs, claims, losses, damages, causes of action, judgments, penalties, or other costs or expenses (collectively, the "Claims") to the extent arising out of Customer or its employees use of DAT Products by Customer other than expressly allowed under this Agreement. DAT shall indemnify, defend, and hold harmless Customer from and against any Claims to the extent arising out of the negligence or willful misconduct of DAT. The party seeking indemnity shall notify the other party as soon as reasonably practicable of any such claim or cause of action, and shall provide reasonable assistance in the defense thereof, provided that any delay or failure to deliver any such notice shall not relieve the party obligated to provide indemnity hereunder from its obligations except to the extent such delay or failure materially prejudices such party.

### 20. FORCE MAJEURE

The parties are excused from performance for any period during which, and to the extent that, it or its subcontractors and suppliers are prevented from performing any obligation or service, in whole or in part, as a result of causes beyond their reasonable control, and without

their fault or negligence including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, epidemics, communication line failures, and power failures.

**21. RELATIONSHIP BETWEEN THE PARTIES**

The parties are independent contractors. Nothing in this Agreement shall be construed to create a partnership, joint venture or agency relationship between the parties.

**22. GOVERNING LAW/ATTORNEY'S FEES**

This Agreement and the respective rights and obligations of the parties hereto shall be construed, interpreted, applied and governed in accordance with the laws of the State of Delaware without regard to choice of law principles. The parties hereto agree that any action arising out of or relating to this Agreement shall be litigated solely in the state and federal courts located in Multnomah County, Oregon, and the parties hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of these courts over any suit, action or proceeding arising out of this Agreement. The prevailing party in any litigation involving this Agreement shall be entitled to recover reasonable attorney's fees and costs.

**23. NOTICES**

Notices required or permitted under this Agreement will be in writing and email is acceptable except for notices of breach of this Agreement – which must be sent by overnight delivery through a nationally recognized courier service (such as UPS, Federal Express, DHL). All notices will be delivered or sent to the other Party at the addresses listed below:

| DAT | | Customer | |
|---|---|---|---|
| Contact: | Contract Administration | Contact: | Brian Kreiner |
| Address: | 8405 SW Nimbus Ave | Address: | 1700 7th Ave Ste 116 #287 |
| | Beaverton, OR 97008-7106 | | Seattle, WA 98101-1323 |
| Phone: | 503.643.4331 | Phone: | 855.526.6869 |
| Fax: | 503.526.6480 | Fax: | |
| Email: | contractadministration@dat.com | Email: | briank@convoy.com |
| | | With a copy to: | General Counsel |

**24. ENTIRE AGREEMENT/MODIFICATION/SEVERABILITY**

With the exception of the DAT Data Analytics Services Agreement and Statement of Work signed April 27, 2018 which shall remain in full force and effect, this Agreement constitutes the entire Agreement and understanding between the parties and shall not be modified, altered, changed or amended in any respect unless in writing and signed by duly authorized representatives of both parties. In the event of a conflict or inconsistency between the terms and conditions of this Agreement, the Supplement, and any Addenda, the terms and conditions of each document shall take precedence and control in the following order: Supplement, this Agreement, and Addenda. If any part(s) of this Agreement shall be held invalid, unlawful, or void for any reason whatsoever, the provisions of this Agreement shall be void only as to such part(s) and such part(s) shall be deemed severable and shall not affect the validity and enforcement of the rest of this Agreement.

**IN WITNESS WHEREOF,** the parties signed this Agreement on the Effective Date noted above.

| Accepted by: | Accepted by: |
|---|---|
| DAT SOLUTIONS, LLC ("DAT") | Customer: Convoy, Inc |
| *Mike Weaver* (DocuSigned) | *Brian Kreiner* (DocuSigned) |
| Signature | Signature |
| Mike Weaver | Brian Kreiner |
| Printed Name | Printed Name |
| Director of Sales | CFO |
| Title | Title |
| 11/8/2018 \| 12:25 PM PST | 11/7/2018 \| 4:08 PM PST |
| Date | Date |