Per A. Ramfjord, OSB No. 934024
per.ramfjord@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Amy H. Candido (*pro hac vice*)
acandido@wsgr.com
Charles Tait Graves (*pro hac vice*)
tgraves@wsgr.com
Jordan Jaffe (*pro hac vice*)
jjaffe@wsgr.com
Justina Sessions (*pro hac vice*)
jsessions@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

*Attorneys for Convoy, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAT SOLUTIONS, LLC, | Case No.: 3:22-cv-00088-IM |
| Plaintiff/Counterdefendant, | **CONVOY'S MOTION TO COMPEL PRE-DISCOVERY IDENTIFICATION OF TRADE SECRET CLAIMS AND A COMPLETE RESPONSE TO INTERROGATORY 1; AND FOR PROTECTIVE ORDER** |
| v. | |
| CONVOY, INC., | |
| Defendant/Counterclaimant. | **Redacted** |
| | **REQUEST FOR ORAL ARGUMENT** |

## <u>TABLE OF CONTENTS</u>

LOCAL RULE 7.1(A) COMPLIANCE ........................................................................1

MOTION.....................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

BACKGROUND ........................................................................................................3

ARGUMENT ..............................................................................................................4

I.    THE COURT SHOULD ISSUE A PROTECTIVE ORDER BARRING DAT
      FROM TAKING DISCOVERY UNTIL IT IDENTIFIES ALLEGED TRADE
      SECRETS. ........................................................................................................4

      A.    Courts Require Pre-Discovery Identification of Trade Secrets with
            Reasonable Particularity. ......................................................................... 4

      B.    DAT Has Failed to Identify Its Alleged Trade Secrets with Reasonable
            Particularity............................................................................................. 8

            1.    DAT Does Not Describe Anything that Could be a Trade Secret. .............8

            2.    DAT's Identification Is Improperly Open-Ended....................................11

            3.    DAT Does Not Identify the Number of Individual Trade Secrets............12

      C.    The Court Should Issue a Protective Order Barring DAT from Taking
            Discovery Until It Complies with the Pre-Discovery Identification Rule. ........... 12

II.   THE COURT SHOULD COMPEL A FULL AND COMPLETE RESPONSE TO
      INTERROGATORY 1..........................................................................................13

CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  2019 U.S. Dist. LEXIS 5048 (N.D. Cal. Jan. 10, 2019) .....................................9

*Attia v. Google LLC*,
  2018 U.S. Dist. LEXIS 84196 (N.D. Cal. May 20, 2018) ..........................................14, 15

*AutoMed Techs., Inc. v. Eller*,
  160 F. Supp. 2d 915 (N.D. Ill. 2001) ...................................................................6

*Avaya Inc. v. Cisco Sys., Inc.*,
  2011 WL 4962817 (D.N.J. Oct. 18, 2011)..............................................................6

*Coda Dev. S.R.O. v. Goodyear Tire & Rubber Co.*,
  2019 U.S. Dist. LEXIS 202114 (N.D. Ohio Nov. 21, 2019) ...............................6

*DeRubeis v. Witten Techs., Inc.*,
  244 F.R.D. 676 (N.D. Ga. 2007)...........................................................6, 13, 15

*Dura Glob. Techs., Inc. v. Magna Donnelly, Corp.*,
  2007 U.S. Dist. LEXIS 89650 (E.D. Mich. Dec. 6, 2007)......................................*passim*

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*,
  2018 U.S. Dist. LEXIS 102529 (E.D. Cal. June 18, 2018)................................12

*Engelhard Corp. v. Savin Corp.*,
  505 A.2d 30 (Del. Ch. 1986)................................................................................5

*Giasson Aerospace Science, Inc. v. RCO Eng'g*,
  2009 WL 1384179 (E.D. Mich. 2009)..................................................................6

*Hill v. Best Med. Int'l, Inc.*,
  2010 U.S. Dist. LEXIS 62726 (W.D. Penn. June 24, 2010)..............................14

*Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols. USA, Inc.*,
  2009 WL 4429156 (W.D.N.C. 2009) ...................................................................6

*JJ Plank Co. v. Bowman*,
  2018 U.S. Dist. LEXIS 123792 (W.D. La. July 23, 2018) .................................6

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
  No. 10-cv-02868-MSK-KMT, Dkt. 119 (D. Col. Oct. 12, 2011)........................6

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
  755 F. Supp. 635 (D. Del. 1991)..........................................................................6

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
  2019 WL 4284523 (C.D. Cal. June 11, 2019) ....................................................6

*Mednet Sols. Inc. v. Eric Jacobson & Veeva Sys., Inc.*,
  2021 U.S. Dist. LEXIS 253609 (D. Minn. Sep. 16, 2021) ...............................10

*Nike, Inc. v. Enter Play Sports, Inc.*,
  305 F.R.D. 642 (D. Or. 2015) .............................................................................7

*Opal Labs, Inc. v. Sprinklr, Inc.*,
  2019 U.S. Dist. LEXIS 208870 (D. Or. Dec. 4, 2019) ......................................7

*Porus Media Corp. v. Midland Brake, Inc.*,
  187 F.R.D. 598 (D. Minn. 1999)..........................................................................6

*Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*,
  2012 WL 3113162 (D. Conn. July 31, 2012) ......................................................6

*Quaiz v. Rockler Retail Grp., Inc.*,
  2017 U.S. Dist. LEXIS 35415 (D. Or. Mar. 13, 2017) ......................................7

*Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*,
  2021 U.S. Dist. LEXIS 100738 (N.D. Cal. May 27, 2021) .......................5, 6, 10

*Sennco Sols., Inc. v. Mobile Techs., Inc.*,
  2020 U.S. Dist. LEXIS 249760 (D. Or. Dec. 21, 2020) .....................................7

*Space Data Corp. v. Alphabet Inc.*,
  2018 U.S. Dist. LEXIS 236165 (N.D. Cal. Apr. 24, 2018) ..............................11

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
  305 F.R.D. 630 (D. Or. 2015) .............................................................................7

*Stoncor Grp., Inc. v. Campton*,
  2006 WL 314336 (W.D. Wash. Feb. 7, 2006) ..................................................15

*StoneEagle Servs., Inc. v. Valentine*,
  2013 U.S. Dist. LEXIS 188512 (N.D. Tex. June 5, 2013) .................................5

*Storagecraft Tech. Corp. v. Symantec Corp.*,
  2009 WL 361282 (D. Utah Feb. 11, 2009) ..........................................................6

*Structural Pres. Sys. v. Andrews*,
  2014 U.S. Dist. LEXIS 204151 (D. Md. Mar. 26, 2014)...............................9, 10

*Switch Commc'ns Grp. v. Ballard*,
  2012 WL 2342929 (D. Nev. June 19, 2012)..................................................6, 13

*Synygy, Inc. v. ZS Assocs., Inc.*,
    2013 WL 3716518 (E.D. Pa. July 15, 2013) ...................................................15

*TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*,
    966 F.3d 46 (1st Cir. 2020) ..........................................................................6

*United Servs. Auto. Ass'n v. Mitek Sys.*,
    289 F.R.D. 244 (W.D. Tex. 2013) .................................................................5

*UOP LLC v. Exterran Energy Sols, LP*,
    2021 WL 8016712 (S.D. Tex. Sept. 28, 2021) ..............................................6

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
    147 F. Supp. 3d 1147 (D. Or. 2015) ..................................................5, 6, 7, 11

*Vesta Corp. v. Amdocs Mgmt., Ltd.*,
    2016 U.S. Dist. LEXIS 45741 (D. Or. Apr. 1, 2016) .....................................9

## STATUTES

18 U.S.C. § 1839 ..........................................................................................11

## RULES

Fed. R. Civ. P. 26 ..........................................................................3, 12, 14, 15

## MISCELLANEOUS

Sedona Conference, *Commentary on the Proper Identification of Asserted Trade
    Secrets in Misappropriation Cases* (2021) ...................................................14

## LOCAL RULE 7.1(a) COMPLIANCE

Pursuant to Local Rule 7.1(a), counsel for Convoy, Inc. ("Defendant" or "Convoy") conferred via email, letter correspondence, and videoconference with counsel for DAT Solutions, LLC ("Plaintiff" or "DAT") regarding this dispute.  The parties were unable to resolve the dispute.

## MOTION

Pursuant to Local Rule 26-3, Convoy respectfully requests this Court to (1) issue a protective order pursuant to Local Rule 26-4 barring DAT from commencing discovery until it provides at least a "reasonably particular" identification of each alleged trade secret at issue; and (2) compel DAT to respond to Convoy's Interrogatory 1 by providing a fully detailed, individual identification of each such alleged trade secret, with precision above the "reasonably particular," pre-discovery level.  Convoy also requests that the Court (3) issue an ***expedited***, interim order postponing a July 14, 2022 deposition of a Convoy executive until this motion is decided.

## MEMORANDUM OF POINTS AND AUTHORITIES

DAT alleges that Convoy – a former customer of DAT's services – misappropriated DAT's trade secrets when Convoy launched a new product in late 2021.  This motion is about DAT's duty to identify each of these alleged trade secrets in meaningful detail before discovery can begin.  So far, DAT has listed only high-level, content-free concepts – such as the ███████████ and ███████████████████ – instead of identifying anything specific that one could study to test for trade secrecy or misappropriation.  At the same time, DAT has noticed an early deposition of a senior Convoy executive on July 14, 2022.  This deposition request makes DAT's failure to identify its trade secrets acute.  Convoy is not opposed to a deposition, but it has a right to understand what it is accused of misappropriating before its witnesses testify.

In courts around the country – including in this District and in Delaware, whose law governs the Uniform Trade Secrets Act (UTSA) claim here – the case law has solidified into what

many federal courts now call a "growing consensus": that a plaintiff alleging trade secret misappropriation under the federal Defend Trade Secrets Act (DTSA) or state law must provide, before commencing discovery, a "reasonably particular" identification of each alleged trade secret that was supposedly misappropriated by the defendant, rather than a generalized list of opaque concepts and categories that is typically described in public complaints. Otherwise, the defendant is effectively unable to investigate (1) whether each item of information is really secret, compared to public domain information; (2) whether defendant really used the information; and (3) whether plaintiff used reasonable measures to protect that particular information.

That is not all. When a defendant serves an interrogatory to require the plaintiff to identify each alleged trade secret in full detail – and not just stop at the pre-discovery, "reasonably particular" level of identification – courts also compel answers to such interrogatories.

Both steps – (1) pre-discovery, "reasonably particular" identification; and (2) an interrogatory requiring a fully detailed identification – are at issue on this motion. That is so because DAT refused to provide a pre-discovery trade secret identification until Convoy served an interrogatory (Interrogatory 1) seeking a fully detailed claim identification. In response, DAT served a statement that falls far below both standards. Requiring DAT to meet the pre-discovery requirement and respond to Convoy's interrogatory will cause no prejudice to DAT, since discovery is only just beginning and the Court has yet to enter a scheduling order.

Because these two inflection points now arise together, Convoy seeks (1) an order compelling DAT to identify each separate trade secret as Convoy's Interrogatory 1 requires – in full detail, not inscrutable generalities; and (2) a protective order preventing DAT from commencing discovery from Convoy until it provides at least a "reasonably particular" identification of each separate trade secret claim.

## BACKGROUND

On April 20, 2022, the parties conducted an initial conference pursuant to Federal Rule 26(f) and Local Rule 26-1. Convoy requested that DAT identify each alleged trade secret at issue with "reasonable particularity" before commencing discovery. Convoy reiterated this position in the parties' Joint Status Report. *See* Dkt. 31 at 2-3, ¶ 3.d. DAT refused, arguing that no federal or local rule requires pre-discovery identification of its trade secrets. *See id.* at 3, ¶ 3.e.

On the same day as the Rule 26(f) conference, Convoy attempted to resolve this issue by immediately serving interrogatories on DAT, including Interrogatory 1 which requires DAT to:

> Identify with precision and specificity each and every alleged trade secret that plaintiff contends defendant unlawfully acquired, used, or disclosed. "Identify with precision and specificity each and every alleged trade secret" as used herein means to provide *a specific description of each such alleged trade secret*, on an individual basis for each such alleged trade secret, in such a manner that the *exact identity, scope, boundaries, constitutive elements, and content of each such alleged trade secret are fully disclosed in writing, in contrast to an agglomerated set of conclusory phrases* that does not separately list and describe each such alleged trade secret, in contrast to a mere list of documents or file names, and with precision far above that required by any applicable pre-discovery trade secret claim identification requirement.

Exhibit 1 at 5-6 (emphasis added). The term "alleged trade secret" is defined as "any item of non-public information Plaintiff contends it treated as confidential, contends it disclosed to Defendant in confidence, and contends that Defendant unlawfully used, disclosed, or acquired …." *Id.* at 3.

After receiving Convoy's interrogatories, but before serving any responses, DAT began asking for the availability of Convoy's Vice President of Partnerships, Brooks McMahon, to sit for an early deposition. DAT then served responses to Convoy's interrogatories on June 3, 2022. Its response to Interrogatory 1 is attached as Exhibit 2. As detailed below, the response consists entirely of high-level phrases, descriptions, concepts, and categories that do not meaningfully communicate an identification of trade secrets. Instead, DAT broadly identifies ███████████ ██████████████████████ in which the trade secrets purportedly reside: ████████████



*Id.* at 4-11.  None of these generic phrases actually identify what the trade secrets are; nor do they come close to responding to the question asked in Interrogatory 1.  Indeed, DAT's response is so devoid of detail that DAT could have included the entirety of it in a public complaint.[1]

Despite failing to identify its alleged trade secrets – let alone respond with the additional level of detail required by Interrogatory 1 – DAT again pressed for Mr. McMahon's deposition and reiterated that it would not limit questioning to non-trade secret issues.  The deposition is now noticed for July 14, 2022, thus prompting Convoy's motion for a protective order.

## ARGUMENT

**I.    THE COURT SHOULD ISSUE A PROTECTIVE ORDER BARRING DAT FROM TAKING DISCOVERY UNTIL IT IDENTIFIES ALLEGED TRADE SECRETS.**

### A.    Courts Require Pre-Discovery Identification of Trade Secrets with Reasonable Particularity.

A plaintiff's complaint does not typically reveal detailed identifications of alleged trade secrets, because that would publicly disclose such information.  Instead, identification comes at two inflection points: (1) pre-discovery, "reasonably particular" identification; and (2) identification in response to a defense interrogatory calling for a higher level of technical detail.

---

[1] Convoy is filing the interrogatory response under seal because DAT designated it as "ATTORNEYS' EYES ONLY" pursuant to the Protective Order.  However, Convoy does not believe that anything identified in the response is actually confidential.

The first inflection point comes before discovery begins, in a procedure unique to trade secret law: the pre-discovery, "reasonably particular" claim identification. One of the first states to create this rule was Delaware, whose UTSA governs the state law trade secret claims here. *See Engelhard Corp. v. Savin Corp.*, 505 A.2d 30 (Del. Ch. 1986). Today, federal courts recognize a "growing consensus" in favor of such pre-discovery identification, and use their inherent case-management authority under Rule 16 to sequence discovery events to enforce this standard. *StoneEagle Servs., Inc. v. Valentine*, 2013 U.S. Dist. LEXIS 188512, at *5-8 (N.D. Tex. June 5, 2013) (applying Rule 16 to require pre-discovery identification of alleged trade secrets at issue); *see also, e.g.*, *United Servs. Auto. Ass'n v. Mitek Sys.*, 289 F.R.D. 244, 248-49 (W.D. Tex. 2013) (same). "[P]laintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets." *Dura Glob. Techs., Inc. v. Magna Donnelly, Corp.*, 2007 U.S. Dist. LEXIS 89650, at *6-7 (E.D. Mich. Dec. 6, 2007).

This widely recognized procedure is supported by "strong practical and policy reasons," including to give the defendant and the court fair notice of the specific claims being asserted. *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1153-56 (D. Or. 2015). Pre-discovery identification also prevents plaintiffs from changing or re-characterizing their alleged trade secrets during the course of litigation. As one court recently explained, "trade secret cases are especially susceptible to pleading chicanery. Experience has shown that it is all too easy for a plaintiff to allege trade secrets with calculated vagueness, then use discovery to redefine the trade secrets to be whatever is found in defendant's files." *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, 2021 U.S. Dist. LEXIS 100738, at *1 (N.D. Cal. May 27, 2021). Pre-discovery trade secret identification is thus "an important tool in preserving fair and efficient litigation in the district

courts." *Id.* at *3; *see also, e.g.*, *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 51-52 (1st Cir. 2020) (noting that, because trade secrets are not subject to any public registration requirements, "[t]his raises the possibility that the trade secret owner will tailor the scope of the trade secret in litigation to conform to the litigation strategy").[2]

In Oregon, as in other federal courts around the country, the "reasonable particularity" standard requires a "description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *Vesta*, 147 F. Supp. 3d at 1154-56 (noting that the plaintiff must "identify its alleged trade secrets with reasonable particularity") (citation omitted).  Thus, courts "commonly order a list of trade secrets at the outset of the litigation." *Id.* at 1155 (citation omitted).

To be sure, identifying trade secret claims means spelling them out, but not any adjudication on the merits.  Thus, while a plaintiff is not expected to "prove their trade secret claim prior to conducting discovery, [] it 'must provide enough detail about its alleged trade secrets to at

---

[2] Courts across the country similarly require or recognize early claim identification. *See, e.g.*, *UOP LLC v. Exterran Energy Sols, LP*, 2021 WL 8016712, at *1 (S.D. Tex. Sept. 28, 2021); *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 4284523, at *2 (C.D. Cal. June 11, 2019); *JJ Plank Co. v. Bowman*, 2018 U.S. Dist. LEXIS 123792, at *7 (W.D. La. July 23, 2018); *Coda Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 2019 U.S. Dist. LEXIS 202114, at *11 (N.D. Ohio Nov. 21, 2019); *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2012 WL 3113162, at *1-2 (D. Conn. July 31, 2012); *Switch Commc'ns Grp. v. Ballard*, 2012 WL 2342929, at *4-5 (D. Nev. June 19, 2012); *Avaya Inc. v. Cisco Sys., Inc.*, 2011 WL 4962817, at *2 (D.N.J. Oct. 18, 2011); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02868-MSK-KMT, Dkt. 119 (D. Col. Oct. 12, 2011); *Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols. USA, Inc.*, 2009 WL 4429156, at *4 (W.D.N.C. 2009); *Giasson Aerospace Science, Inc. v. RCO Eng'g*, 2009 WL 1384179, at *2 (E.D. Mich. 2009); *Storagecraft Tech. Corp. v. Symantec Corp.*, 2009 WL 361282, at *2 (D. Utah Feb. 11, 2009); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 682 (N.D. Ga. 2007); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 925-26 (N.D. Ill. 2001); *Porus Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991).

least suggest that the alleged trade secrets might be legally protectable.'" *Opal Labs, Inc. v. Sprinklr, Inc.*, 2019 U.S. Dist. LEXIS 208870, at *3-4 (D. Or. Dec. 4, 2019) (citing *Vesta Corp*). The plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries which the secret lies." *Sennco Sols., Inc. v. Mobile Techs., Inc.*, 2020 U.S. Dist. LEXIS 249760, at *5-6 (D. Or. Dec. 21, 2020) (cleaned up).  It is not enough for the plaintiff to describe its alleged trade secrets by generic category or to describe "the end results of, or functions performed by, the claimed trade secrets." *Vesta*, 147 F. Supp. 3d at 1156.  Instead, "[the plaintiff] must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data, … [and] must also describe with reasonable particularity [those trade secrets] involving business methods, know-how, machines, manufacturing process and procedure, marketing information, pricing data, product designs and manufacturing information, [and] supplier and vendor lists." *Id.* at 1155 (citation omitted).  In short: the metes and bounds of the trade secret.[3]

---

[3] In meeting and conferring DAT cited four cases in this District that supposedly "rejected" the pre-discovery identification rule.  The only case that did not apply the rule was *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630 (D. Or. 2015); but that case was quickly superseded by *Vesta*, which recognized the "growing consensus" and noted that *St. Jude* did not adopt "the rule applied by many federal courts across the country."  147 F. Supp. 3d at 1152-53. Two other cases cited by DAT did not require further identification because the plaintiffs had **already** identified their trade secrets with reasonably particularity, thus mooting the issue.  *See Nike, Inc. v. Enter Play Sports, Inc.*, 305 F.R.D. 642, 644, 646 (D. Or. 2015) (plaintiff identified its trade secrets in a sealed complaint that included "numerous specifics, including drawings and illustrations"); *Quaiz v. Rockler Retail Grp., Inc.*, 2017 U.S. Dist. LEXIS 35415, at *8 (D. Or. Mar. 13, 2017) (plaintiff already identified its trade secrets, including by emailing 14 detail drawings of the design at issue to defendant).  The fourth case cited by DAT, *Opal Labs*, is cited herein and **endorsed** the identification rule.  2019 U.S. Dist. LEXIS 208870, at *3-4.

DAT also asserted that Convoy "waived" the rule by seeking offensive discovery from DAT. Not so.  First, it is the plaintiff, not the defendant, who is subject to the identification requirement.

**B.    DAT Has Failed to Identify Its Alleged Trade Secrets with Reasonable Particularity.**

DAT's response to Interrogatory 1 does not satisfy the pre-discovery, "reasonably particular" standard – much less the higher level of detail that Interrogatory 1 requires.

**1.    DAT Does Not Describe Anything that Could be a Trade Secret.**

Broadly speaking, DAT lists six categories in which it says trade secrets reside: ███



Four, in whole or in part, refer to streams of data. Three, in whole or in part, refer to software. DAT does not endeavor to describe anything within those broad categories that might constitute a trade secret, such as an element of software code, a specific algorithm, or anything like that. Instead, it only lists broad categories in which trade secrets are said to reside, using content-free terminology common to practically all data collection and software products. Indeed, as noted above, the descriptions are so general and opaque they could have been included in DAT's public Complaint without revealing anything secret.

As to the data streams, DAT claims that trade secrets reside within the ██████



Ex. 2 at 5-9. This is contentless and meaningless. All software includes ███████ ██████ Most, if not all, software ███████████ ████ – what is unique about *DAT's* collection or processing methodology is not specified. Without an explanation of what actual data is collected and aggregated, or how, DAT's description only constitutes "the common sense and undoubtedly commonplace approach in the industry of

---

Second, Convoy can hardly be said to have "waived" the requirement, given that it served Interrogatory 1 on the very first day of discovery.

organizing and managing … data." *Structural Pres. Sys. v. Andrews*, 2014 U.S. Dist. LEXIS 204151, at *10 (D. Md. Mar. 26, 2014). If DAT means to claim a piece of code, an algorithm, a particular data set, or something else specific, it must say so and specify the metes and bounds of that particular information. *See, e.g.*, *Vesta Corp. v. Amdocs Mgmt., Ltd.*, 2016 U.S. Dist. LEXIS 45741, at *9 (D. Or. Apr. 1, 2016) ("[Terms] are not sufficiently particular, without a disclosure as to what exactly the metrics and descriptions are."). Additionally, a phrase like ██████████ ████████████ is meaningless without an explanation of what ██████████ is at issue.

DAT's references to data products licensed to Convoy also fail to identify any trade secrets. Instead, DAT simply identifies all data that DAT ever *shared* with Convoy, as opposed to data that DAT believes Convoy actually *misappropriated*. For instance, DAT claims that all ████████ ████ that it provided Convoy pursuant to various agreements between the parties constitutes trade secrets. Ex. 2 at 4-8. DAT also claims that ████████████████████████████ ██████████████████████████████ accessible to Convoy through agreements between the parties, constitute trade secrets. *Id.* at 8-9. Similarly, DAT claims that its ██████████, accessible to Convoy through an Early Adopter Agreement, is a trade secret. *Id.* at 9-10. These "generic" claims about "non-public information" that DAT disclosed to Convoy are "catch-all disclosures" of vast amounts of information that was previously licensed to Convoy, but do not describe the specific data DAT alleges Convoy has *misappropriated*. *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 U.S. Dist. LEXIS 5048, at *8-9 (N.D. Cal. Jan. 10, 2019) (finding plaintiff's identification of all non-public information "disclosed to" defendant gave insufficient "notice of what the claimed trade secrets are"). DAT is essentially saying that everything it ever provided Convoy is a trade secret, and the subject of its claims. But as the court held in *Dura Global*, "it is not Defendant's burden to review

over 8500 sheets of paper … to discern which material constitutes Plaintiffs' trade secrets and further, which of those are the subject of the Plaintiffs' claim for misappropriation." 2007 U.S. Dist. LEXIS 89650, at *11-12. It is DAT's responsibility to identify *which* data is a trade secret that Convoy allegedly accessed *and misappropriated*. If DAT cannot say, then that indicates it never had a good faith basis to assert trade secret claims against Convoy in the first place, and that DAT is attempting to "use discovery to redefine the trade secrets to be whatever is found in defendant's files" – precisely the type of "pleading chicanery" that the pre-discovery identification rule is designed to prevent. *Quintara Biosciences*, 2021 U.S. Dist. LEXIS 100738, at *1; *see also, e.g.*, *Structural Pres. Sys.*, 2014 U.S. Dist. LEXIS 204151, at *12 (finding that "[s]uch broad and open-ended descriptions reaffirm the Court's concerns that Plaintiffs are simply trawling for information that they may use to mold their allegations").



DAT's descriptions of its software products are even worse. ████████ trade secret is described as its ██████████████████████ Ex. 2 at 10. The ████████ trade secret is its ███████████████████████████ ████████████████████ *Id.* at 11. The ████████████████ trade secret is ██████████████████ ████████████ *Id.* All of this is meaningless. "When the trade secret involves software, a plaintiff must provide details such as source code and the specific designs, methods, and processes that *underlie* the public functionality." *Mednet Sols. Inc. v. Eric Jacobson & Veeva Sys., Inc.*, 2021 U.S. Dist. LEXIS 253609, at *6 (D. Minn. Sep. 16, 2021) (emphasis in original). *All* software has ████████████████████████ Software is, by definition, ████████ All software products designed for end users have an ████████ ██████████████████████ ████████████ or

 could refer to organization of source code, order of operations for specific algorithms, data schemas or models, or something else.  If DAT claims a trade secret in an ███████████████████████  *See Space Data Corp. v. Alphabet Inc.*, 2018 U.S. Dist. LEXIS 236165, at \*9 (N.D. Cal. Apr. 24, 2018) (pre-discovery identification insufficient where plaintiff "is claiming as its trade secret ███████████████████████ ███████; DAT also refers to ███████████████████████ ███████ (Ex. 2 at 11), but without an explanation of ███████████████ ███████ is impossible to know.

In sum, there is nothing in DAT's description of its alleged trade secrets that would enable Convoy to compare this information with the public domain to determine whether it is actually "secret" and not "generally known" – fundamental elements of all trade secrets.  18 U.S.C. § 1839(3).  Nor is there anything in DAT's description that would allow Convoy to examine its own systems, compare them with DAT's alleged trade secrets, and determine whether Convoy misappropriated any of them.  DAT's description also fails to give Convoy sufficient information about "the nature" of DAT's claims or "enable [Convoy] to determine the relevancy of any requested discovery[.]"  *Vesta*, 147 F. Supp. 3d at 1155.

### 2.    DAT's Identification Is Improperly Open-Ended.

DAT also impermissibly uses language that leaves open the possibility that DAT will assert different or additional trade secrets in the future.  This is an admission that DAT did not provide a complete response and is hedging its bets until it gets discovery from Convoy.  Courts forbid this.



At the outset, DAT states that ███████████████████████ ███████ Ex. 2 at 4 (emphasis added).  Again, in its description of the ███████ ███████████████ DAT states that various parts of the ███████████ constitute trade secrets, ███████████████████████

████████████████████████████ *Id.* at 11 (emphasis added). The terms "may include" and "including" are "so vague and unspecific as to constitute no disclosure at all" because the language implies that DAT may supplement or alter its alleged trade secrets in the future, preventing Convoy from being able to determine the "boundaries" of the alleged trade secrets. *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 U.S. Dist. LEXIS 102529, at *12 (E.D. Cal. June 18, 2018). In both instances, DAT should be required to remove all indicators of incompleteness and either: (1) include any unstated, additional claims; or (2) clarify that no unstated, additional claims will be asserted for these points.

### 3. DAT Does Not Identify the Number of Individual Trade Secrets.

Finally, DAT fails to identify the exact number of different trade secrets it is asserting. To meet the reasonable particularity standard, a plaintiff must identify exactly how many trade secrets it is alleging and whether each identified item is an individual secret or a secret when combined. *See, e.g., E. & J. Gallo Winery*, 2018 U.S. Dist. LEXIS 102529, at *15 (ruling that in pre-discovery identification, the total number of trade secrets asserted should be clear). In its description of ████████████████████, DAT merely lists a number of ███████ without explaining whether each ████ is a separate trade secret or that a particular combination of ████ constitutes a trade secret. Ex. 2 at 5. Similarly, in its description of ██████████████████████████, DAT states that those products identify ██████████████████████████████████████ ████████████████████████ without explaining if each category identified is an individual trade secret or if the categories form one trade secret when combined. *Id.* at 8.

### C. The Court Should Issue a Protective Order Barring DAT from Taking Discovery Until It Complies with the Pre-Discovery Identification Rule.

Federal Rule 26(c) and Local Rule 26-4 authorize the Court to issue a protective order that forbids, sequences, specifies the terms of, or limits the scope of discovery – including in trade

secret cases where a plaintiff fails to adequately identify its trade secrets. *See, e.g.*, *Dura Glob.*, 2007 U.S. Dist. LEXIS 89650, at \*14-16 (issuing a protective order staying discovery on trade secret matters "until Plaintiffs identify the alleged misappropriated trade secrets with reasonable particularity"); *Switch Commc'ns Grp.*, 2012 WL 2342929, at \*5 (holding that defendant was not required to respond further to plaintiff's discovery requests until plaintiff "provides a description of its alleged trade secrets with reasonable particularity"); *DeRubeis*, 244 F.R.D. at 681 (issuing protective order staying counterclaim discovery until defendant "first identif[ies] with 'reasonable particularity' those trade secrets it believes to be at issue").

The Court should issue a protective order barring DAT from taking any discovery (including the deposition of Mr. McMahon on July 14) until DAT provides a reasonably particular identification of its alleged trade secrets. This protective order must necessarily encompass all discovery from Convoy, because the factual allegations underlying DAT's trade secret claims form the basis of all of its causes of action. *Compare* Compl. (Dkt. 1) ¶¶ 54, 62 *with id.* ¶¶ 67-71, 76, 80, 84 (all alleging that Convoy engaged in various torts and breaches of contract by misappropriating DAT trade secrets). The Court should also issue an interim order postponing the deposition of Mr. McMahon until (at minimum) this motion is fully briefed and decided.

## II. THE COURT SHOULD COMPEL A FULL AND COMPLETE RESPONSE TO INTERROGATORY 1.

The second inflection point where a plaintiff identifies its trade secret claims comes in response to a defense interrogatory seeking detail above the "reasonably particular" level required before discovery. When a trade secret defendant asks for a clear, specific, and individualized identification of each alleged trade secret, courts typically grant motions to compel a response.

In 2018, the Northern District of California addressed the same interrogatory here with the same supporting definitions, and ordered the plaintiff to provide greater specificity, explaining:

> [Plaintiff's] description of the means for executing the idea is [] fraught with
> vagueness and uncertainty and lack of precision …. Whether or not the claimed
> trade secrets are trade secrets is not this court's call. This court's job is to require
> [Plaintiff] to use his best efforts to fully describe what he claims are viable trade
> secrets…. [A]s yet plaintiff has not yet sufficiently complied with Interrogatory
> #1's request to identify with precision and specificity the "exact identity, scope,
> boundaries, constitutive elements, and content" of each alleged trade secret. The
> court is not looking for more wordy narrative…. Rather, the court is interested in
> a fuller explanation of the metes and bounds of the trade secrets and a better fleshing
> out of the particulars of how its parts would be created and made to work.

*Attia v. Google LLC*, 2018 U.S. Dist. LEXIS 84196, at *4-5 (N.D. Cal. May 20, 2018).

In another case involving a nearly identical interrogatory, the plaintiff had previously offered a pre-discovery identification statement featuring such generalities as "files containing sales information and marketing projections for [plaintiff's] product." *Hill v. Best Med. Int'l, Inc.*, 2010 U.S. Dist. LEXIS 62726, at *5-6 & nn.4-5 (W.D. Penn. June 24, 2010). In response, the plaintiff largely pointed back to its pre-discovery claim identification. The court required a better response instead of these "general allegations and generic references." *Id.* at *14.

Many other courts have likewise required trade secret plaintiffs to respond to identification interrogatories by providing more detail about each asserted trade secret. For example, in *Dura Global*, a federal court in Michigan ruled that a "list of general categories and types of information [plaintiffs] allege[d] comprise their trade secrets" was an insufficient response. 2007 U.S. Dist. LEXIS 89650, at *11-12. The court ordered plaintiff to file a particularized identification of its trade secrets under seal, and issued a protective order under Federal Rule 26(c) staying discovery on trade secret matters until it did so. The recent Sedona Conference paper on identification of asserted trade secrets collects many other such cases, and it sets forth guidelines for the appropriate level of specificity for different types of claims.[4]

---

[4] *See generally* Sedona Conference, *Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases* (2021) (https://thesedonaconference.org/node/9717) (*see* Appendix). While counsel for Convoy participated, the commentary represents broad

Here, because DAT failed to identify its alleged trade secrets with "reasonable particularity" mandated by the pre-discovery identification requirement, it also necessarily failed to fully answer Interrogatory 1.  While DAT's failure to meet the pre-discovery identification standard suffices to issue a protective order, DAT should also be compelled to comply with Rule 33 and provide a complete response to Interrogatory 1 as written.  If it were otherwise, DAT would succeed in collapsing these separate inflection points together and would avoid having to provide a fully detailed identification of each trade secret claim – relevant and material information that Convoy is fully entitled to.  *See, e.g.*, *Attia*, 2018 U.S. Dist. LEXIS 84196, at *2-5; *Dura Glob.*, 2007 U.S. Dist. LEXIS 89650, at *11-12 (ordering more detailed responses).

## CONCLUSION

For the reasons stated above, Convoy respectfully requests this Court to (1) issue a protective order pursuant to Federal Rule 26(c) and Local Rule 26-4 barring DAT from commencing discovery until it provides at least a "reasonably particular" identification of each separate alleged trade secret; and (2) compel DAT to respond to Convoy's Interrogatory 1 by providing a fully detailed, individual identification of each separate alleged trade secret, with precision above the "reasonably particular," pre-discovery level.  Convoy also requests that the Court (3) issue an ***expedited***, interim order postponing the deposition of Convoy's Brooks McMahon until this motion is fully briefed and decided.

---

agreement among many judges, practitioners, and academics during a three-year drafting process.  For other, relevant cases involving identification interrogatories, *see Synygy, Inc. v. ZS Assocs., Inc.*, 2013 WL 3716518, at *5 (E.D. Pa. July 15, 2013) (noting that defendants should not have to guess what the plaintiff's claims were; ordering a specific identification); *DeRubeis*, 244 F.R.D. at 679 (same where response "does not specify any trade secrets at all, but rather reveals the end results of, or the functions performed by, the claimed trade secrets"); *Stoncor Grp., Inc. v. Campton*, 2006 WL 314336, at *1-2 (W.D. Wash. Feb. 7, 2006) (plaintiff's response insufficient where it "referenced its complaint and then listed generic [technical] categories [such as]: 'installer list/network,' 'pricing strategy and policies,' and 'customer lists'").

Dated: June 28, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

*s/ Amy H. Candido*
Amy H. Candido (*pro hac vice*)
acandido@wsgr.com
Charles Tait Graves (*pro hac vice*)
tgraves@wsgr.com
Jordan Jaffe (*pro hac vice*)
jjaffe@wsgr.com
Justina Sessions (*pro hac vice*)
jsessions@wsgr.com
Telephone: (415) 947-2000

and

STOEL RIVES LLP
Per A. Ramfjord, OSB No. 934024
per.ramfjord@stoel.com
Telephone: (503) 224-3380

*Attorneys for Convoy, Inc.*