## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| **DAT SOLUTIONS, LLC**, | Case No. 3:22-cv-00088-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING DEFENDANT CONVOY, INC.'S MOTION TO DISMISS AND DENYING PLAINTIFF DAT SOLUTIONS, LLC'S MOTION TO DISMISS** |
| v. | |
| **CONVOY, INC.**, | |
| Defendant. | |

Damond Mace & Sean McGrane, Squire Patton Boggs (US) LLP, 127 Public Square, 1000 Key Tower, Cleveland, OH 44114. Marjorie A. Elken, Buckley Law, P.C., 5300 Meadows Road, Suite 200, Lake Oswego, OR 97035. Attorneys for Plaintiff.

Amy Candido, Charles T. Graves, Jordan R. Jaffe, Jordan Nelson & Justina Sessions, Wilson Sonsini Goodrich & Rosati, P.C., 1 Market Plaza, Suite 3300, San Francisco, CA 94105. Jason B. Mollick & Praatika Prasad, Wilson Sonsini Goodrich & Rosati, P.C., 1301 Avenue of the Americas, New York, NY 10019. Per A. Ramfjord, Stoel Rives LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff DAT Solutions, LLC ("DAT") filed suit against Defendant Convoy, Inc.

("Convoy") in this Court on January 19, 2022, alleging trade secret violations arising out of

Convoy's creation of a competing "load board," a technology that enables freight brokers to post

shipment listings for transportation. ECF 1. DAT alleges six claims in its Complaint: (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*; (2) misappropriation of trade secrets in violation of Delaware's Uniform Trade Secrets Act ("Delaware UTSA"), 6 Del. C. § 2001, *et seq.*; (3) breach of contract; (4) unjust enrichment; (5) unfair competition; and (6) tortious interference with prospective business opportunities. *Id.* On March 21, 2022, Convoy filed a motion to dismiss all of DAT's claims, with the exception of DAT's breach of contract claim. ECF 26. DAT filed a response to Convoy's motion, ECF 30, and Convoy filed a reply, ECF 32.

On June 17, 2022, Convoy filed a Partial Answer to the Complaint and Counterclaims, alleging the following six counterclaims: (1) illegal contracts in restraint of trade in violation of 15 U.S.C. § 1; (2) monopolization in violation of 15 U.S.C. § 2; (3) attempted monopolization in violation of 15 U.S.C. § 2; (4) illegal contracts in restraint of trade in violation of Oregon Revised Statute ("ORS") 646.725; (5) monopolization in violation of ORS 646.730; and (6) attempted monopolization in violation of ORS 646.730. ECF 36. DAT filed a motion to dismiss Convoy's counterclaims in their entirety with prejudice on July 22, 2022. ECF 55. Convoy filed a response to DAT's motion, ECF 57, and DAT filed a reply, ECF 59.

Before this Court are Convoy's Motion to Dismiss, ECF 26, and DAT's Motion to Dismiss, ECF 55. For the following reasons, this Court GRANTS Convoy's motion and DENIES DAT's motion.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## BACKGROUND

DAT is a Delaware limited liability company with headquarters in Beaverton, Oregon and Denver, Colorado. ECF 1 at ¶ 10. DAT has created a load board, which is a system that allows long-haul truckers and other carriers of freight to connect with entities that need to have freight shipped from one point to another. *Id.* at ¶ 1. In addition, DAT also gives customers

PAGE 3 – OPINION AND ORDER

access to a proprietary collection of historical and real-time pricing data and route information. *Id.* at ¶ 19. For example, DAT offers a product called "Rate View" that generates a benchmark rate for shipping a load of freight from one specific geographic point to another through a proprietary algorithmic process that incorporates both historical and real-time data only available to DAT. *Id.* at ¶ 20.

DAT has over 138,000 customers in the United States. *Id.* at ¶ 18. Market participants can "easily access[]" the DAT load board through mobile application, internet, telephone, fax, or monitors located inside truck stops. *Id.* at ¶¶ 2, 17. By 2001, there were approximately 1,200 such monitors. *Id.* at ¶ 17. Customers may also access Rate View and other proprietary pricing and shipping data and information through the DAT network. *Id.* at ¶ 20.

Convoy is a Delaware corporation and a venture capital, private equity-backed firm founded by tech executives in Seattle in 2015. *Id.* at ¶¶ 3, 11. Convoy began as a freight broker, which is an entity hired by third parties to arrange shipping for their freight. *Id.* at ¶ 25. Such brokers rely both on the DAT load board to find carriers to move their clients' freight and on Rate View to ensure competitive pricing for their customers. *Id.* at ¶ 27.

In 2016, Convoy entered into a National Account Agreement ("Agreement") with DAT to access the DAT load board. *Id.* at ¶ 28. The Agreement is governed by Delaware law. *Id.* at ¶ 58. The Agreement was amended effective November 7, 2018. *Id.* at ¶ 28. Section Four of the Agreement states, in relevant part:

> **Non-Compete as a Load Board:** Customer [Convoy] represents and warrants that its use of DAT's Products: (a) is solely for Customer's commercial purposes related to its movement of freight . . . During the Term, Customer may not create a load board wherein they aggregate other brokers' loads with the intent of competing with DAT.

*Id.* at ¶ 30; ECF 1-1. Section 13 of the Agreement states, in relevant part:

> **Copyright/Trademarks/Advertisements:** Information provided by DAT is proprietary to DAT. Customer may not sell or share DAT load and truck information with third parties. Customer agrees to use the information provided by DAT solely for its own internal business purposes, and shall not reproduce, publish, resell or distribute such information for sale or commercial use. Customer's use of DAT Products does not grant to the Customer ownership of any content, code, data or materials Customer may access through these Products.

ECF 1 at ¶ 31; ECF 1-1. DAT and Convoy also entered into a Data Analytics Services

Addendum on November 7, 2018, which was "incorporated and made a part" of the Agreement.

ECF 1 at ¶ 32. Section 3 of the Addendum states, in relevant part:

> **Proper Use and Confidentiality:** Customer will be licensed to utilize its updated master file database, without restriction, once the Services are delivered by DAT, with the understanding that the data provided is from proprietary sources and may be utilized for Customer's internal purposes only. Customer shall treat all rate or market information provided by DAT as confidential. Customer will not use DAT rate information or other proprietary product information to develop a competitive lane rate product, invest in direct competitors, or competitive start ups, or provide DAT rate or product/service information to any company considered by DAT to be a competitor. . . Customer may not replicate/resell data or files structures received from DAT. Confidentiality requirements shall survive termination of any/all agreements/addendums.

*Id.* at ¶ 32; ECF 1-2. Finally, the parties entered into a "DAT Connexion Interface End User

License" agreement on November 7, 2018. ECF 1 at ¶ 33. The License states, in relevant part:

> **Non-Competition:** [Defendant] shall not use the Interface or Software to: . . . Create any competing load board or freight matching services to brokers, truckers or shippers . . . and/or . . . Transfer data to any other load board or freight matching service provider.

*Id.* at ¶ 33; ECF 1-3.

On or about October 29, 2021, DAT learned that Convoy was creating a competing load

board. ECF 1 at ¶ 35. On November 6, 2021, shortly after confirming that Convoy had created a

competing load board, DAT declined to renew Convoy's access to the DAT load board. *Id.* at ¶

37. On November 18, 2021, Convoy publicly stated in press releases and social media postings

that it was launching its own competing load board, "Convoy for Brokers," and had been

working on creating this product for over a year. *Id.* at ¶¶ 7, 38. In one press release, an officer of

USA Truck—an "industry-leading freight provider," *id.* at ¶ 39—confirmed that it had been posting freight to Convoy's competing load board throughout the prior year. *Id.* at ¶ 40. DAT alleges that, in order to build its competing load board, Convoy misappropriated DAT's proprietary information and trade secrets and misused data taken from the DAT load board. *Id.* at ¶ 46.

## DISCUSSION

### A. Convoy's Motion to Dismiss

Convoy moves to dismiss the following claims brought by DAT under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim: (1) misappropriation of trade secrets in violation of the DTSA, 18 U.S.C. § 1836, *et seq.* ("Count One"); (2) misappropriation of trade secrets in violation of the Delaware UTSA, 6 Del. C. § 2001, *et seq.* ("Count Two"); (3) unjust enrichment ("Count Four"); (4) unfair competition ("Count Five"); and (5) tortious interference with prospective business opportunities ("Count Six"). ECF 26 at 2. Convoy argues that DAT's misappropriation of trade secrets claims should be dismissed because DAT has failed to sufficiently plead that it employed reasonable security measures to guard the alleged trade secrets at issue, an element of both claims. *Id.* at 3. Convoy also asserts that DAT's unjust enrichment, unfair competition, and tortious interference claims should be dismissed because they are preempted as a matter of law by the Delaware UTSA. *Id.* In the alternative, Convoy contends that 1) DAT's unjust enrichment claim fails because there exists no stand-alone claim for unjust enrichment under Delaware law and because a written contract already governs the parties' relationship and 2) DAT's unfair competition and tortious interference claims fail because the claims are duplicative of DAT's breach of contract claim and because DAT has failed to sufficiently allege the existence of an interfered-with customer. *Id.* at 4.

Because DAT has failed to sufficiently plead that it employed reasonable security measures to guard the alleged trade secrets at issue, this Court GRANTS Convoy's motion to dismiss DAT's misappropriation of trade secrets claims (Counts One and Two) with leave to amend. This Court also GRANTS Convoy's motion as to DAT's unjust enrichment claim (Count Four) because it is preempted by the Delaware UTSA. Finally, because both DAT's unfair competition and tortious interference claims (Counts Five and Six) are duplicative of DAT's breach of contract claim, this Court GRANTS Convoy's motion as to Counts Five and Six with leave to amend.

1. **Misappropriation of Trade Secrets under the DTSA and Delaware UTSA (Counts One and Two)**

DAT brings claims for trade secret misappropriation of its load board and related data under both the federal DTSA (Count One) and the Delaware UTSA (Count Two). ECF 1 at ¶¶ 49–64. Convoy moves to dismiss these claims, asserting that DAT has failed to sufficiently allege it has taken reasonable measures to keep the information at issue secret. ECF 26 at 7–9.

"To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)). Under the DTSA, a required element of a trade secret is that the owner "has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(a). Similarly, to prove trade secret misappropriation under the Delaware UTSA, the plaintiff must demonstrate that: "(1) a trade secret exists; (2) the plaintiff communicated the secret to the defendant; (3) there was an express or implied understanding that the secrecy of the matter would be respected; and (4) the secret information was improperly used or disclosed to the injury of the plaintiff."

*Elenza, Inc. v. Alcon Lab'ys Holding Corp.*, 183 A.3d 717, 721 (Del. 2018). The Delaware UTSA also requires that the secret is the "subject of efforts that are reasonable under the circumstances to maintain its secrecy." 6 Del. C. § 2001(4)(b). As such, both claims at issue require Plaintiff to sufficiently allege that it took reasonable measures to keep the information at issue secret.

DAT argues that it has sufficiently pled that it took reasonable security measures because the Agreement between DAT and Convoy contained confidentiality provisions applicable to DAT's load board and related data. ECF 30 at 7; ECF 1 at ¶¶ 31, 32, 51, 60; *see also* ECF 1-1 at 13 ("Customer may not sell or share DAT load and truck information with third parties."). Convoy contends that alleging the existence of confidentiality provisions applicable to Convoy *alone* is not sufficient to allege reasonable security measures under either the DTSA or the Delaware UTSA. ECF 26 at 9. Rather, Convoy asserts that applicable case law requires that such agreements apply to everyone who accesses the information to amount to sufficient reasonable measures. ECF 32 at 5. Convoy also highlights that DAT emphasizes the general ease of customer access to the load board. *See, e.g.*, ECF 1 at ¶¶ 17 ("By 2001, customers could access the DAT load board by internet, fax, telephone, mail, or through the monitors located inside truck stops—of which there were approximately 1200."), 18 ("The DAT load board can be easily accessed through an app on customers' mobile devices, or through more traditional means."), 23 ("[P]roprietary pricing and shipping data and information, is available to customers through the DAT network."). Because DAT did not allege the application of confidentiality provisions to such customers, Convoy contends that DAT has failed to sufficiently allege this element. ECF 26 at 9. This Court agrees.

As a general matter, under the DTSA, "[c]onfidentiality provisions constitute reasonable steps to maintain secrecy." *InteliClear, LLC*, 978 F.3d at 660–61 (citing *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993)); *see also United States v. Chung*, 659 F.3d 815, 825–26 (9th Cir. 2011) (stating that "oral and written understandings of confidentiality" can qualify as "reasonable measures" to keep information confidential).

However, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see also VBS Distribution, Inc. v. Nutrivita Lab'ys, Inc.*, 811 F. App'x 1005, 1009 (9th Cir. 2020) ("Providing alleged trade secrets to third parties does not undermine a trade-secret claim, *so long as* the information was provided on an understanding of confidentiality." (internal quotation marks and citation omitted) (emphasis added)). Accordingly, courts have held that "[i]nformation that an individual discloses to others who are under no obligation to protect its confidentiality" does not qualify for trade secret protection. *Moreland Apartments Assocs. v. LP Equity LLC*, No. 5:19 CV-00744-EJD, 2019 WL 6771792, at *3 (N.D. Cal. Dec. 12, 2019) (quoting *Nextdoor.com, Inc. v. Abhyanker*, No. C–12–5667 EMC, 2014 WL 1648473, at *4 (N.D. Cal. Apr. 23, 2014)). "A disclosure need not be widespread to defeat trade secret protection; it is defeated if no reasonable effort was made to maintain secrecy." *Id.*

Courts evaluate confidentiality provisions under the Delaware UTSA in a similar manner. Such provisions generally satisfy the requirement of reasonable efforts under Delaware law. *AlixPartners, LLP v. Benichou*, 250 A.3d 775, 783 (Del. Ch. 2019) (citation omitted). However, where information is available to customers or the public, Delaware courts do not find that the plaintiff has made reasonable efforts to protect the secrecy of the information at issue. *Compare*

*Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 596 (Del. Ch. 2010) (finding that plaintiffs took reasonable efforts to maintain secrecy where disclosure policies were in place and trade secrets were not "published or frequently disseminated to customers") *with Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1055–56 (Del. Super. Ct. 2001) (finding that plaintiff failed to take reasonable efforts where trade secret information was available elsewhere).

DAT alleges facts supporting the general dissemination of allegedly proprietary load board information to its customers. ECF 1 at ¶¶ 17, 18, 23 ("This benchmark rate, and other proprietary pricing and shipping data and information, is available to customers through the DAT network."). However, DAT does not allege that such customers, as opposed to Convoy, are subject to confidentiality provisions.[1] Because Plaintiff alleges disclosure of its proprietary information to customers without alleging that such customers are under an obligation to protect the confidentiality of the information, this Court finds that DAT has failed to state a trade misappropriation claim under either the DTSA or the Delaware UTSA. *See Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022) (affirming

---

[1] Although DAT maintains that it has taken sufficient reasonable measures "to protect the secrecy of its information from the industry and the public through the widespread use of confidentiality provisions and other reasonable protections," ECF 30 at 10, DAT does not allege that it has confidentiality provisions with any customers other than Convoy in its complaint. Similarly, although DAT alleges that its load board information "was accessible only through subscriptions with strict confidentiality clauses" for the past twenty years, *id.* at 10–11, DAT does not allege that customer subscriptions were subject to confidentiality provisions in its complaint. Finally, although DAT points out that its Agreement is a template agreement used by other customers, *id.* at 11, DAT does not allege this fact in its complaint. Moreover, this Court notes that DAT concedes that not all of its customers are subject to the Agreement. *Id.* This Court does not consider DAT's arguments in evaluating Convoy's motion because they are not supported by factual allegations in the Complaint. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

dismissal of DTSA claim regarding air freight shipment software program where plaintiff failed to allege it had confidentiality agreements with other users of the program or that access was limited solely to customers bound by such agreements); *MHS Cap. LLC v. Goggin*, No. CV 2017-0449-SG, 2018 WL 2149718, at *14 (Del. Ch. May 10, 2018) (dismissing Delaware UTSA claim where plaintiff "simply recited the bare legal conclusion" that it took reasonable steps to maintain secrecy without providing "supporting detail"). Accordingly, Convoy's motion to dismiss Counts One and Two is GRANTED.

### 2. Unjust Enrichment (Count Four)

DAT also alleges a claim for unjust enrichment, ECF 1 at ¶¶ 74–77, which Convoy contends is preempted by the Delaware UTSA, ECF 26 at 13–14.

The Delaware UTSA "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." 6 Del. C. § 2007(a). The Delaware legislature's professed purpose in adopting the UTSA was to "make uniform the law with respect to [trade secrets] among states enacting it." *Id.* § 2008. As such, courts have concluded that Section 2007 was "intended to preserve a single tort cause of action under state law for misappropriation as defined in 6 Del. Code § 2001(2) and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991). Criminal remedies, contract remedies, and "other civil remedies that are not based on misappropriation of a trade secret" are the only exceptions to this provision. 6 Del. C. § 2007(a).

When "common law claims seek civil remedies based solely on the alleged misappropriation of a trade secret," such claims are precluded under Section 2007. *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002). "Because all claims stemming from the same acts as the alleged misappropriation are intended to be displaced, a claim can be displaced even if the

information at issue is not a trade secret." *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005); *see also 250ok, Inc. v. Message Sys., Inc.*, No. CV 2020-0588-JRS, 2021 WL 225874, at *4 (Del. Ch. Jan. 22, 2021). "A common law claim is 'grounded in the same facts' as a trade secret claim if the same facts are used to establish all the elements of both claims." *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 631 F. Supp. 2d 504, 508 (D. Del. 2009); *see also Savor, Inc.*, 812 A.2d at 898.

Convoy argues that DAT's unjust enrichment claim is precluded by Section 2007 because 1) as an initial matter, Section 2007 applies to DAT's unjust enrichment claim as it is a restitutionary remedy and 2) DAT alleges the same facts to support both its unjust enrichment and Delaware UTSA claims. ECF 26 at 13. First, because unjust enrichment is a restitutionary remedy, Convoy asserts that DAT's claim falls within the category of claims precluded by Section 2007. *Id.* This Court agrees, as the Delaware UTSA explicitly "displaces conflicting . . . restitutionary . . . remedies." 6 Del. C. § 2007(a); *see also 250ok, Inc.*, No. CV 2020-0588-JRS, 2021 WL 225874, at *5 ("The DUTSA unambiguously provides that claims in service of a 'restitutionary' remedy are displaced by the statute. And that is precisely the essence of the unjust enrichment cause of action . . . . It is, therefore, displaced, or preempted, by the DUTSA.").

Second, Convoy asserts that DAT's unjust enrichment claim "mirrors" the Delaware UTSA trade secret misappropriation claim such that it should be precluded. ECF 26 at 14. In asserting its unjust enrichment claim, DAT alleges:

> Convoy impermissibly used the DAT load board and the data and information it contains to, among other things, create a competing load board and promote and develop its own pricing algorithm. Convoy did not pay or otherwise provide compensation to DAT for this impermissible use of DAT's data and services. Convoy has thus been unjustly enriched by obtaining a benefit from DAT without appropriately compensating DAT for the benefit conferred.

ECF 1 at ¶ 76. Thus, DAT appears to allege that Convoy was unjustly enriched by the benefit of using the DAT load board and related information to create competing products without paying for this privilege. Similarly, in bringing its trade secret misappropriation claim under the Delaware UTSA, DAT also alleges that Convoy "unlawfully . . . used . . . DAT's trade secret information, including the DAT load board and the data and information accessible thereon, for Convoy's benefit and advantage—specifically, to create a load board that directly competes with DAT." *Id.* at ¶ 62. Once again, DAT appears to allege that Convoy used the DAT load board and related information to create a competing product for its own benefit.

This Court finds that DAT's unjust enrichment claim stems from the same acts underlying DAT's alleged trade secret misappropriation claim. *See Ethypharm S.A. France*, 388 F. Supp. 2d at 434 (dismissing unjust enrichment claim as precluded where plaintiff alleged that defendant's misappropriation allowed plaintiff to "enter the marketplace . . . without incurring the considerable expense of developing a[] . . . process of its own"); *250ok, Inc.*, No. CV 2020-0588-JRS, 2021 WL 225874, at *5 ("While [the plaintiff] avoids the term 'trade secret' in its Count III, it is clear the claim for unjust enrichment pled in that count rests on the same alleged misappropriation of 'confidential information and proprietary data' that animates the misappropriation of trade secrets claim in Count II."); *see also Savor, Inc.*, 812 A.2d at 898 (affirming dismissal of unfair competition and conspiracy claims prior to trade secret claim determination because the claims "seek civil remedies based solely on the alleged misappropriation of a trade secret").

As a result, this Court finds that DAT's unjust enrichment claim (Count Four) is precluded by Section 2007. Accordingly, this Court GRANTS Convoy's motion as to Count Four.

### 3. Unfair Competition and Tortious Interference (Counts Five and Six)

DAT also brings claims for unfair competition (Count Five) and tortious interference with prospective business opportunities (Count Six). ECF 1 at ¶¶ 78–85. Convoy moves dismiss to these claims on several grounds, including on the grounds that both claims are preempted by the Delaware UTSA and that the claims are duplicative of DAT's breach of contract claim. ECF 26 at 3–4, 17–18.

### a. Preemption under Delaware UTSA

Convoy argues that DAT's unfair competition and tortious interference claims are preempted by the Delaware UTSA. ECF 26 at 14–15. To be preempted by the Delaware UTSA, the claim at issue must be grounded in the same facts as a trade secret claim. *See Savor, Inc.*, 812 A.2d at 898. "A common law claim is 'grounded in the same facts' as a trade secret claim if the same facts are used to establish all the elements of both claims." *Accenture Glob. Servs. GMBH*, 631 F. Supp. 2d at 508. In alleging its unfair competition claim, DAT states: "Convoy wrongfully interfered with [business] relationships by (i) intentionally creating and operating a competing load board that has taken and/or will take customers, or their specific freight postings, away from DAT; and/or (ii) misappropriating DAT's proprietary data and trade secrets in an intentional effort to take customers or freight postings away from DAT." ECF 1 at ¶ 80.

Similarly, in alleging its tortious interference claim, DAT states: "Convoy intentionally interfered with DAT's business opportunities by (i) intentionally creating and operating a competing load board that has taken and/or will take opportunities (including customers and specific freight postings) away from DAT; and/or (ii) misappropriating DAT's proprietary data

and trade secrets in an intentional effort to take customers or freight postings away from DAT." *Id.* at ¶ 84.

This Court finds that DAT's unfair competition and tortious interference claims are not grounded *solely* in the same facts as its trade secret misappropriation claim. Instead, DAT grounds its unfair competition and tortious interference claims, in part, on its allegation that Convoy intentionally created a competing load board in violation of its noncompete provision. ECF 1 at ¶¶ 80, 84. Such conduct is an alleged violation of the Agreement regardless of whether any misappropriation was involved. Indeed, as Convoy itself asserts, DAT "interprets the noncompete as preventing all efforts to compete, even those accomplished without any use of DAT's proprietary information." ECF 57 at 9; *see also* ECF 1 at ¶ 30 (alleging that noncompete provision "expressly forbade Convoy from creating a competing load board"). Accordingly, because DAT's unfair competition and tortious interference claims rely on the creation of the load board, they are not based solely on trade secret misappropriation. *See Ethypharm S.A. France*, 388 F. Supp. 2d at 435 (denying motion to dismiss intentional interference claim where facts alleged may still satisfy the elements of the claim even "if the [alleged] theft of the information does not rise to the level of misappropriation of trade secrets"). This Court finds that dismissal of Counts Five and Six based on preemption is inappropriate at this stage.

### b.  Delaware's Bootstrapping Rule

Convoy also moves to dismiss DAT's claims by citing to Delaware's "bootstrapping" rule. ECF 26 at 18. Under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009). In recognizing that "a breach of contract will not generally constitute a tort," Delaware courts "prevent gratuitous 'bootstrapping' of contract claims into tort claims."

*Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 377 (D. Del. 2008); *see also Kuroda*, 971 A.2d at 889. "[I]n order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract." *Kuroda*, 971 A.2d at 889.

Convoy argues that DAT's claims are impermissibly duplicative of its breach of contract claim under Delaware's bootstrapping rule. ECF 26 at 18. In support of its claims for unfair competition and tortious interference, DAT alleges that Convoy committed wrongful interference by "(i) intentionally creating and operating a competing load board that has taken and/or will take customers, or their specific freight postings, away from DAT; and/or (ii) misappropriating DAT's proprietary data and trade secrets in an intentional effort to take customers or freight postings away from DAT." ECF 1 at ¶ 80; *see also id.* at ¶ 84. This Court addresses each supporting factual allegation in turn.

First, this Court finds that Convoy's intentional creation and operation of a competing load board is squarely within its breach of contract claim. Specifically, the Agreement states that "[d]uring the Term, Customer may not create a load board wherein they aggregate other brokers' loads with the intent of competing with DAT." ECF 1-1 at ¶ 4. Interpreting this provision in its complaint, DAT asserts that this provision "expressly forbade Convoy from creating a competing load board." ECF 1 at ¶ 30. While DAT argues that these tort claims are based on a duty independent of that imposed by this contract—namely, "the common law duty 'not to use wrongful means to dissuade a party from entering or continuing a business relationship'"—such an argument is circular, as this common law duty only applies to means that are *wrongful* as a matter of law. *See Kuroda*, 971 A.2d at 889–90 (holding that a similarly circular argument

regarding common law duty against conversion failed because complaint did not identify interference with a right to money independent of the contract).

DAT's other factual allegation—that Convoy misappropriated DAT's "proprietary data and trade secrets in an intentional effort to take customers or freight postings away from DAT"—also fails because DAT has not established that Convoy's alleged misappropriation was a violation of an independent duty imposed by law. In other words, because DAT has failed to state a claim for trade secret misappropriation, this Court finds that the related factual allegations do not constitute an independent violation of law. As such, this Court finds that DAT's unfair competition claim (Count Five) and tortious interference claim (Count Six) are not based on a violation of a duty imposed by law independent of the contract between the parties. Accordingly, this Court GRANTS Convoy's motion as to Counts Five and Six.

Convoy's Motion to Dismiss, ECF 26, is GRANTED.

## B.  DAT's Motion to Dismiss

In its Partial Answer and Counterclaims, Convoy alleges six counterclaims: (1) illegal contracts in restraint of trade in violation of 15 U.S.C. § 1 ("Counterclaim One"); (2) monopolization in violation of 15 U.S.C. § 2 ("Counterclaim Two"); (3) attempted monopolization in violation of 15 U.S.C. § 2 ("Counterclaim Three"); (4) illegal contracts in restraint of trade in violation of Oregon Revised Statute ("ORS") 646.725 ("Counterclaim Four"); (5) monopolization in violation of ORS 646.730 ("Counterclaim Five"); and (6) attempted monopolization in violation of ORS 646.730 ("Counterclaim Six"). ECF 36. DAT moved to dismiss Convoy's counterclaims in their entirety with prejudice. ECF 55 at 1.

Because Convoy's allegations, when taken as true, are sufficient to state each of these claims, this Court DENIES DAT's motion to dismiss in its entirety.

1.   **Illegal Contracts in Restraint of Trade in violation of 15 U.S.C. § 1 (Counterclaim One)**

Convoy's first counterclaim is for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. ECF 36 at ¶¶ 82–92. Section 1 of the Sherman Act "makes unlawful 'every contract, combination . . . , or conspiracy, in restraint of trade or commerce among the several States.'" *Parker v. Brown*, 317 U.S. 341, 350 (1943) (quoting 15 U.S.C. § 1). To state a claim under Section 1 of the Sherman Act, a plaintiff must plead facts that demonstrate the following: "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *see also Jack Russel Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1033 (9th Cir. 2005) (a plaintiff must allege "(1) the existence of a contract, combination, or conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce."). The Sherman Act "does not prohibit [all] unreasonable restraints of trade . . . but only restraints effected by a contract, combination, or conspiracy." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775 (1984). To survive a motion to dismiss on a Section 1 claim, a plaintiff must allege plausible grounds to infer an agreement—in other words, "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

a.   **Existence of a Contract, Combination, or Conspiracy**

DAT does not dispute that Convoy has plausibly alleged the first element of a Section 1 claim: the existence of a contract, combination, or conspiracy. DAT concedes that it entered into

a series of contracts with Convoy, including the November 7, 2018 Agreement, which governed

Convoy's use of DAT's products and contained the provisions at issue. ECF 55 at 5–6.

### b. Unreasonable Restraint of Trade

DAT argues that Convoy has failed to plausibly allege the second element of a Section 1

claim: unreasonable restraint of trade. ECF 55 at 10. Convoy claims that DAT imposes "patently

anticompetitive restrictions on customers who need access to DAT's load board . . . ." ECF 36 at

¶ 56. There are two standards for determining whether a particular restraint of trade is

unreasonable: the rule of reason and the per se standard. Per se violations are "so harmful to

competition and so rarely . . . justified that the antitrust laws do not require proof that an

agreement of that kind is, in fact, anticompetitive in the particular circumstances." *NYNEX Corp.*

*v. Discon, Inc.*, 525 U.S. 128, 133 (1998); *see also Brantley v. NBC Universal, Inc.*, 675 F.3d

1192, 1197 n.6 (9th Cir. 2012) ("The Supreme Court has identified a small number of restraints

that always or almost always tend to restrict competition and decrease output." (internal

quotations marks and citations omitted)). These restraints are "per se unlawful." *Brantley*, 675

F.3d at 1197 n.6. Restraints that are per se illegal include horizontal agreements to fix prices.

*United States v. Brown*, 936 F.2d at 1042, 1045 (9th Cir. 1991); *see also Leegin Creative Leather*

*Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007).

For non-per se violations, Courts apply the rule of reason. Unlike horizontal agreements,

vertical restraints are presumptively subject to the rule of reason. *Ohio v. Am. Express Co.*, 138

S. Ct. 2274, 2284 (2018). Under the rule of reason, a court weighs "all of the circumstances of a

case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable

restraint on competition." *Leegin*, 551 U.S. at 885. "The rule of reason requires courts to conduct

a fact-specific assessment of 'market power and market structure . . . to assess the [restraint]'s

actual effect' on competition." *Am. Express Co.*, 138 S. Ct. at 2284 (alteration in original) (quoting *Copperweld Corp.*, 467 U.S. at 768).

The rule of reason analysis consists of a "three-step, burden-shifting framework." *Id.*; *see also PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022). "Under this framework, the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Am. Express Co.*, 138 S. Ct. at 2284. The plaintiff can make this showing directly or indirectly: direct evidence of anticompetitive effects is "proof of actual detrimental effects [on competition] . . . such as reduced output, increased prices, or decreased quality in the relevant market," while indirect evidence is "proof of market power plus some evidence that the challenged restraint harms competition." *Id.* (alteration in original) (internal quotation marks and citations omitted). "If the plaintiff carries its burden, then the burden shifts to the defendant to show a procompetitive rationale for the restraint." *Id.* (citations omitted). "If the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Id.* (citations omitted).

The parties "disagree about whether the non-competes are horizontal or vertical, and [therefore] subject to per se condemnation or the rule of reason." ECF 57 at 5. This Court finds that it need not determine at this stage whether the agreement should be considered a horizontal or vertical restraint or whether Convoy has plausibly stated a claim under the per se standard because Convoy has alleged sufficient facts to state a claim under the rule of reason. *See CollegeNet, Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926, 948 (D. Or. 2018) ("The rule of reason is the presumptive or default standard . . . ."); *see also Gatan, Inc. v. Nion Co.*, No. 15-

cv-01862-PJH, 2017 WL 3478837, at *5 (N.D. Cal. Aug. 14, 2017) ("Because [the counterclaim plaintiff] was both a customer and a potential competitor . . . , it is not clear at this stage whether the [a]greement should be considered a vertical or horizontal restraint . . . [b]ut the court need not decide whether the rule of reason applies to the [a]greement . . . at the pleading stage . . . .").

Convoy alleges that DAT engages in two types of anticompetitive behavior that violate Section 1 of the Sherman Act: (1) barring customers from competing with DAT through the use of non-compete provisions in contracts ("non-compete provisions"), ECF 36 at ¶¶ 56–63, and (2) requiring customers to use its load board exclusively ("exclusive use arrangements"), *id.* at ¶¶ 64–67; *see also* ECF 57 at 5. DAT responds that neither the non-compete provisions nor the exclusive use arrangements are unreasonable restraints of trade. ECF 55 at 2. This Court will consider each alleged restraint in turn.

### i. Non-Compete Provisions

Convoy entered the Agreement with DAT in 2016. ECF 1 at ¶ 28. The Agreement was amended effective November 7, 2018. *Id.* at ¶ 28; *see also* ECF 36 at ¶ 57. Section 4 of the Agreement, entitled "NON-COMPETE AS A LOAD BOARD," states in relevant part that "[d]uring the Term, Customer may not create a load board wherein they aggregate other brokers' loads with the intent of competing with DAT." *Id.* at ¶ 59. Convoy alleges that DAT has interpreted this provision to bar Convoy from "providing any competitive product or service, even if Convoy did so using its own independent efforts, and without using anything belonging to DAT." *Id.* (citing ECF 1 at ¶ 30). Convoy further alleges that DAT has interpreted the provision to bar Convoy from even "preparing to compete while it was a DAT customer." *Id.* (citing ECF 1 at ¶ 8). Based on the non-compete provision, Convoy claims that DAT "conditioned Convoy's access to DAT's 'must have' load board on a promise that Convoy would not compete or even prepare to compete with DAT for at least three years." *Id.* at ¶ 61. Convoy

alleges that "[o]n information and belief, DAT has imposed similar competition prohibitions on other digitally native DAT customers that might pose a competitive challenge to DAT's legacy market dominance." *Id.* at ¶ 63. Convoy further alleges that these "blanket competition prohibitions" dissuade "would-be competitors from entering the spot freight matching services market out of fear of being cut off or shut down by DAT." *Id.* at ¶¶ 75–76.

This Court finds that Convoy has plausibly alleged that the non-compete provisions are anticompetitive under the rule of reason. Convoy has met the initial burden of demonstrating that the non-compete provision has a substantial anticompetitive effect that harms consumers in the relevant market. This Court need not decide whether Convoy has made this showing directly because this Court finds that Convoy has alleged sufficient facts the demonstrate indirect evidence of anticompetitive effects: Convoy has alleged facts to demonstrate DAT's market power in the spot freight matching market and additional evidence that the non-compete provision harms competition. *Am. Express Co.*, 138 S. Ct. at 2284; *PLS.Com, LLC*, 32 F.4th at 834. Convoy has alleged that DAT controls "over 64% share of the relevant market," *id.* at ¶ 45, and that the challenged restraint harms competition by effectively eliminating "would-be competitors" through the threat of litigation and by stifling innovation in the trucking industry, *id.* at ¶¶ 76, 79; *see PLS.COM, LLC*, 32 F.4th at 839–40 ("Prevent[ing] innovative competitors from entering the market and growing large enough to meaningfully compete . . . leaves [consumers] with fewer choices, supra-competitive prices, and lower quality products.").

Because Convoy has met its initial burden of alleging anticompetitive effects that harm consumers in the relevant market, the burden shifts to DAT to show a procompetitive rationale for the non-compete provision. *Am. Express Co.*, 138 S. Ct. at 2284; *PLS.Com, LLC*, 32 F.4th at 834. DAT fails to make any specific arguments that the non-compete provision is

procompetitive. *See generally* ECF 55 at 14–16. Moreover, the Ninth Circuit has cautioned that "whether the alleged procompetitive benefits of the [restraint] outweigh its alleged anticompetitive effects is a factual question that the district court cannot resolve on the pleadings." *PLS.COM, LLC*, 32 F.4th at 839; *see also Gatan, Inc.*, No. 15-CV-01862-PJH, 2017 WL 3478837, at *5 ("[T]he court need not . . . weigh [the agreement's] pro- and anti-competitive effects[] at the pleading stage . . . [i]t is enough that [the counterclaim plaintiff] plausibly alleges that the [a]greement restrains trade, and potential competitor's promise not to make a competing product limits competition."). Consequently, this Court declines to consider the potential procompetitive benefits of the non-compete provision and finds that Convoy has adequately alleged in its counterclaim that the non-compete provision is an unreasonable restraint on trade.

DAT argues that Convoy's allegations are insufficient to show that DAT requires consumers, other than Convoy, to enter into non-compete agreements because Convoy's allegations as to other consumers are made "only on information and belief." ECF 55 at 14. This Court is not persuaded. "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *see also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant."). Here, DAT's agreements with its other consumers are within DAT's possession and control. Moreover, Convoy has pled additional factual information from which this Court can infer that non-compete provisions exist in DAT's contracts with other consumers. For example, Convoy has

alleged that the agreement it signed with DAT was a "form" agreement. ECF 36 at ¶ 60.[2]

Therefore, this Court finds that Convoy has plausibly alleged that DAT also includes non-compete provisions in its agreements with other consumers.

DAT also argues that Convoy has failed to plead that these provisions are anti-competitive under the rule of reason because courts in the Ninth Circuit and around the country have "repeatedly held that non-compete provisions are lawful and appropriate under the Sherman Act where they are reasonable in scope and duration and serve a legitimate business purpose." ECF 55 at 14–15. DAT is correct that the Ninth Circuit has stated that non-compete provisions that are reasonable in scope and duration and serve a legitimate business purpose are not generally considered a restraint of trade. *See Trixler Brokerage Co. v. Ralston Purina Co.*, 505 F.2d 1045, 1051 (9th Cir. 1974). But DAT cites two unpublished cases from this district for the proposition that the non-compete provision at issue in this case is reasonable in scope and duration under the Sherman Act. ECF 55 at 15 (citing *Allstate Ins. Co. v. Rote*, No. 3:16-CV-01432-HZ, 2016 WL 4191015 (D. Or. Aug. 7, 2016) and *Actuant Corp. v. Huffman*, No. CV-04-998-HU, 2005 WL 396610 (D. Or. Feb. 18, 2005)). And neither case arises in the context of an antitrust claim; both cases consider the validity of non-compete agreements under Oregon employment law. Convoy has alleged that the non-compete agreement lasts throughout the full duration of the Agreement's three-year term, ECF 36 at ¶¶ 56, 61, and that the blanket provision prohibits Convoy, without qualification, from creating, or even preparing to create, a competitive product or service, *id.* at ¶¶ 61. Given the lack of authority provided by DAT on this issue, this

---

[2] This Court notes that, while DAT fails to allege in its Complaint that confidentiality provisions exist in its agreements with any customers other than Convoy, Convoy does allege in its Partial Answer and Counterclaims that DAT's agreements with customers other than Convoy contain provisions prohibiting competition. ECF 36 at ¶ 60.

Court declines to find at this stage that the non-compete agreements are reasonable in scope and duration.

DAT further argues that the non-compete provisions serve the legitimate business purpose of protecting DAT's propriety data, information, and software. ECF 55 at 15. However, Convoy argues that "DAT does *not* allege that [the non-compete] provision merely prohibited Convoy from creating a competing load board *by using DAT's information*." ECF 57 at 9 (citing ECF 1 at ¶ 30 (the non-compete provision "expressly forbade Convoy from creating a competing load board"); *id.* at ¶ 34 ("Convoy was expressly not permitted to (i) create a competing load board, on which freight could be posted for purposes of matching shippers and carriers."); *id.* at ¶ 67 ("Convoy breached this provision by, at a minimum, (i) creating a competing load board during the term of the . . . Agreement")). Rather, as Convoy points out, the non-compete provision seems to prevent Convoy from creating a load board under any circumstances. *Id.* ("DAT alleges that this provision 'prohibit[ed] Convoy from creating a competing load board' – full stop."). Convoy alleges that the non-compete provision bars Convoy from providing, or preparing to provide, any competitive product or service, even if Convoy did so without using DAT's information. ECF 36 at ¶ 59. This Court finds that Convoy has plausibly alleged that the non-compete provision does not serve a legitimate business purpose. Accordingly, Convoy has plausibly alleged that the non-compete provision found in the Agreement is an unreasonable restraint on trade.

### ii. Exclusive Use Arrangements

Convoy also argues that DAT's exclusive use arrangement constitutes an unreasonable restraint on trade. Convoy alleges that DAT requires consumers to "pay higher prices unless they agree to use DAT's load board exclusively and refrain from using or sharing any load or capacity data with DAT's competitors . . . [thereby] penaliz[ing] its customers if they want to use any

other load board or share data with any other load board." *Id.* at ¶ 64. Convoy alleges that DAT required Convoy to "pay a penalty when Convoy asked to be released from its exclusivity commitments," *id.* at ¶ 66, and even after Convoy agreed to pay for the right to use other load boards, Convoy "remained obligated to share all of its load data with DAT, and was barred from 'contribut[ing] data to any other service which aggregates data for purposes of providing trucking lane rates and is deemed a competitive service by DAT," *id.* (alteration in original). Convoy further alleges on information and belief that DAT "forces other digitally native broker customers to agree to the same or similar exclusivity provisions as a condition for accessing DAT's products and services." *Id.* at ¶ 70.

This Court finds that Convoy has also plausibly alleged that the exclusive use arrangement is an unreasonable restraint of trade under the rule of reason. As with the non-compete provision, Convoy has met the initial burden of demonstrating that the exclusive use arrangement has a substantial anticompetitive effect that harms consumers in the relevant market. As with the non-compete provision, this Court need not decide whether Convoy has made this showing directly because this Court finds that Convoy has alleged sufficient facts to demonstrate indirect evidence of anticompetitive effects. *Am. Express Co.*, 138 S. Ct. at 2284; *PLS.Com, LLC*, 32 F.4th at 834. As stated above, Convoy has demonstrated proof of DAT's market power in the spot freight matching market. ECF 36 at ¶ 45 (DAT controls "over 64% share of the relevant market."). Convoy has also alleged additional evidence that the exclusive use arrangement harms competition by forcing consumers to pay higher prices and provide more data in exchange for DAT's products and services, reducing the quality of services in the market, and preventing competitors from acquiring enough data to creative viable alternatives to DAT. *Id.* at ¶¶ 76, 79.

Because Convoy has met its initial burden of alleging anticompetitive effects that harm consumers in the relevant market, the burden shifts to DAT to show a procompetitive rationale for the exclusive use arrangement. *Am. Express Co.*, 138 S. Ct. at 2284; *PLS.Com, LLC*, 32 F.4th at 834. This time, DAT does argue that the exclusive use arrangement is procompetitive: DAT contends that Convoy is "not forced to enter into exclusive contracts to do business with DAT." ECF 55 at 13. Rather, Convoy merely receives a price discount, which courts generally find "benefit consumers . . . as long as they are not predatory." *Id.* (citations omitted). However, as explained above, the Ninth Circuit has cautioned against weighing the alleged procompetitive benefits of a restraint against the alleged anticompetitive effects at the pleading stage, *PLS.COM, LLC*, 32 F.4th at 839, and this Court declines to do so here.

DAT again argues that Convoy fails to plausibly allege that DAT requires consumers, other than Convoy, to enter into exclusive dealing arrangements because Convoy's "speculative allegations regarding other consumers' purported 'exclusive contracts' with DAT are only made on information and belief." ECF 55 at 12. As this Court also addressed above, DAT has possession and control of its agreements with its other consumers, and Convoy has alleged additional facts from which this Court can infer that the exclusive use arrangement exists in DAT's contracts with other consumers. *See Soo Park*, 851 F.3d at 928; *see also Concha*, 62 F.3d at 1503. Accordingly, Convoy has plausibly alleged that the exclusive use arrangement found in the Agreement is an unreasonable restraint on trade.

### c.  Injury to Competition

This Court must next consider the third element: whether Convoy has plausibly alleged that DAT's conduct actually injures competition. *Kendall*, 518 F.3d at 1047; *Jack Russel Terrier Network of N. Cal.*, 407 F.3d at 1033. DAT contends that Convoy has not sufficiently plead

injury to competition in the market. ECF 55 at 22.[3] DAT argues that Convoy alleges mere injury to its own position as a competitor but "fails to plausibly allege that consumers in the market for spot freight matching services—shippers, carriers[,] and brokers—have been harmed in any way by the conduct ascribed to DAT." *Id.* at 4 (internal quotation marks omitted). As this Court noted above, Convoy alleges that the non-compete provisions and exclusive use arrangements injure competition by effectively eliminating "would-be competitors" through the threat of litigation, ECF 36 at ¶ 76, "depriv[ing] other spot freight matching services of the volume of customers and loads required to challenge DAT's dominance and obtain new customers," *id.* at ¶ 77, and "den[ying] potential competitors the volume and pricing data they need to compete . . . [and] forcing consumers to share all of their shipping data with DAT as a condition for accessing DAT's service . . . [to] ensure that DAT—and only DAT—has enough data to predict shipping rates," *id.* at ¶ 78.

Convoy has also alleged that DAT's conduct injures competition by (1) forcing consumers to "pay higher prices and provide more data in exchange for DAT's products and services than they would otherwise pay if DAT faced substantial competition"; (2) "reducing the quality of services in the relevant market, including by reducing the number and quality of loads available on non-DAT spot freight matching services"; (3) "preventing competitors from

---

[3] This Court notes that DAT raises this argument in a separate section addressing antitrust injury. As addressed below, antitrust injury is the fourth element of a Section 1 Sherman Act claim. *Brantley*, 675 F.3d at 1197. It must be proven separate and apart from the third element: actual injury to competition. *Id.* at 1200. Unlike the third element, which requires a plaintiff to show injury to the *market*, the fourth element requires a plaintiff to show injury to the *plaintiff*, itself. *Id.* DAT argues that Convoy fails to allege this fourth element because Convoy fails to allege injury to the market, beyond just the impact on Convoy itself. ECF 55 at 22. In doing so, DAT misinterprets the distinction between the third and fourth elements of a Section 1 Sherman Act claim. However, this Court will address DAT's arguments regarding the fourth element in this section, as DAT's arguments pertain to injury to the market.

acquiring enough data to create viable alternatives to DAT"; and (4) "stifling innovation in the trucking industry, including by shutting down disrupters like Convoy who face legal action for merely competing with DAT." *Id.* at ¶ 79. As this Court also addressed above, Convoy plausibly alleges that DAT employs these non-compete provisions and exclusive use arrangements with respect to other consumers. *See Soo Park*, 851 F.3d at 928 ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."). As such, this Court finds that Convoy adequately alleges that DAT's non-compete provisions and exclusive use arrangements result in injury to competition in the market beyond just the impact on Convoy itself.

DAT also argues that Convoy's "boilerplate, conclusory" allegations "rel[y] entirely on general, formulaic phrases parroting the elements it would be required to show." ECF 55 at 23–24. This Court disagrees. This Court does not find that Convoy's allegations of anticompetitive behavior so boilerplate or conclusory as to warrant dismissal at this stage. Convoy's allegations are specific to the conduct that DAT allegedly engages in, including both non-compete provisions and exclusive use arrangements.

### d. Antitrust Injury

In addition to the three elements addressed above, Convoy must plead "that they were harmed by the defendant's anti-competitive contract, combination, or conspiracy, and that this harm flowed from an 'anti-competitive aspect of the practice under scrutiny.'" *Brantley*, 675 F.3d at 1197 (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). This fourth element is generally referred to as "antitrust injury" or "antitrust standing." *Id.* "Plaintiffs may not substitute allegations of injury to the claimants for allegations of injury to competition.

Plaintiffs must plead 'antitrust injury' . . . in addition to, rather than in lieu of, injury to competition." *Id.* at 1200. In short, in addition to demonstrating injury to the market, a plaintiff must also demonstrate injury to the plaintiff, itself.

Convoy alleges that it "has suffered, and will continue to suffer, injury in fact and antitrust injury by virtue of DAT's conduct." ECF 36 at ¶ 80. As a DAT customer, "Convoy was prohibited from using other load boards for several years, and was required to purchase from DAT the opportunity to do so." *Id.* Convoy alleges that when it did "buy itself out of DAT's exclusivity requirements, Convoy found that competing services lacked coverage and quality because DAT had locked up a substantial portion of the relevant market and denied others access to data," and that it "had to accede to DAT's unreasonable demands, such as sharing all of Convoy's load data as a condition for accessing DAT's RateView service." *Id.* Convoy also alleges that it "suffered, and will continue to suffer, harm as a competitor of DAT and a market innovator." *Id.* at ¶ 81. Convoy alleges that DAT has "weaponized the . . . Agreement in an attempt to shut down Convoy for Brokers and thus to extinguish a competitor and disrupter in the relevant market" and "deprived Convoy for Brokers of potential consumers by requiring other brokers to agree to exclusivity provisions that prohibit brokers from using or posting loads to Convoy for Brokers." *Id.*

DAT argues that Convoy has failed to plead the requisite antitrust injury for all its counterclaims. ECF 55 at 22. However, as noted above, *see supra* note 1, DAT mistakenly argues that Convoy must plead an injury to competition beyond the impact on Convoy itself in order to demonstrate antitrust injury. However, the Ninth Circuit has instructed that plaintiffs plead antitrust injury by demonstrating that they, *themselves*, were harmed by the defendant's anti-competitive conduct. *Brantley*, 675 F.3d at 1197, 1200. DAT fails to make specific

arguments challenging the injury to Convoy, itself. Indeed, DAT seems to concede that Convoy alleged injury to "[its] own position[] as a competitor." ECF 55 at 4 (alteration in original) (citations omitted). In the absence of DAT's arguments to the contrary, this Court finds that Convoy has sufficiently alleged antitrust injury. Convoy's allegations, when taken as true, are sufficient to state a claim under Section 1 of the Sherman Act. Accordingly, DAT's motion to dismiss Convoy's claim of illegal contracts in restraint of trade under the Sherman Act (Counterclaim One) is DENIED.

### 2. Monopolization in violation of 15 U.S.C. § 2 (Counterclaim Two)

Convoy's second counterclaim is for a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, based on monopolization. ECF 36 at ¶¶ 93–98. Section 2 of the Sherman Act makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. To state a claim for monopolization under Section 2 of the Sherman Act, a plaintiff must allege: (1) "[p]ossession of monopoly power in the relevant market"; (2) "willful acquisition or maintenance of that power;" and (3) "causal antitrust injury." *SmileCare Dental Grp. V. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (internal quotation omitted). DAT raises two challenges to Convoy's monopolization claim. First, DAT argues that Convoy fails to adequately plead that DAT possesses monopoly power over the relevant market. ECF 55 at 18. Second, DAT argues that Convoy fails to adequately plead barriers to entry into the relevant market. *Id.* at 19.

DAT first argues that Convoy fails to adequately allege that DAT possesses monopoly power because Convoy's counterclaim states that "DAT's load board has over 64% share of the

relevant market." ECF 36 at ¶ 45.[4] Convoy notes that courts "generally require a 65% market share to establish a prima facie case of market power." ECF 55 at 18; *see also Image Tech. Servs. V. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997) (citing *American Tobacco Co. v. United States*, 328 U.S. 781, 797 (1946)). But Convoy fails to persuasively argue that a party must allege sixty-five percent market share or higher to plausibly state a claim for monopoly power. Instead, the Ninth Circuit has cautioned against applying "bright-line rules regarding market share in deciding whether a defendant has market power to restrict output or raise prices." *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 n.10 (9th Cir. 1995). Convoy cites to no case that has decided, as a matter of law, that a market share of "over 64%" cannot adequately support a claim for monopolization. Given the lack of authority on this issue, as well as the Ninth Circuit's guidance to courts to consider "certain telltale factors in the relevant market: market share, entry barriers and the capacity of existing competitors to expand output," *id.*, this Court does not find that Convoy has failed to plausibly allege monopolization because it has alleged that DAT controls "over 64% share of the relevant market."

Nor does this Court find persuasive DAT's argument that Convoy's allegation that DAT possess over 64 percent of the relevant market to be a "conclusory statement" of market power insufficient to state a claim for monopolization under the Sherman Act. ECF 55 at 18. In support of this argument, DAT cites to *Aaronson v. Sonnen Volkswagen et al.*, wherein a court in this District dismissed claims for monopolization under the Sherman Act. No. 1:19-cv-00468-CL, 2019 WL 3490447, at *5 (D. Or. June 20, 2019). *Aaronson* is readily distinguishable from the

---

[4] Convoy pleads that the relevant product market is the "spot freight matching services market." ECF 36 at ¶ 54. DAT does not directly challenge that this a legally cognizable product market. ECF 55 at 18. As such, this Court assumes without deciding that this is a legally cognizable product market.

present case; in *Aaronson*, the plaintiff pleaded only that the defendants used their "monopoly power" to deny him economic activity and service and failed to "set forth any allegations regarding the relevant market, defendants' market share, or any behavior by defendants to acquire or maintain market power." *Id.* Here, Convoy has alleged that DAT controls "over 64% . . . of the relevant market . . . based on the volume of loads posted to DAT and the understanding that a significant portion of those loads are exclusive to DAT." ECF 36 at ¶ 45. "Where such an inference is not implausible on its face, an allegation of a specific market share is sufficient, as a matter of pleading, to withstand a motion for dismissal." *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 925 (9th Cir. 1980); *see also Newcal Indus. Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044–45 (9th Cir. 2008) ("In order to state a valid claim under the Sherman Act, a plaintiff must allege . . . that a 'relevant market' exists and that the defendant has power within that market. There is no requirement that these elements . . . be pled with specificity.")

Moreover, as the Ninth Circuit has noted, market share, while relevant, is not the sole factor that a court must consider when determining whether a party possesses monopoly power in the relevant market. Courts must also consider "entry barriers and the capacity of existing competitors to expand output." *Rebel Oil Co., Inc.*, 51 F.3d at 1438 n.10. Entry barriers are "additional long-run costs that were not incurred by incumbent firms but must be incurred by new entrants," or "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns." *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1427–28 (9th Cir. 1993) (citation omitted). To support a claim for monopolization, entry barriers "must be significant," meaning that "they must be capable of constraining the normal operation of the

market to the extent that the problem is unlikely to be self-correcting." *Rebel Oil Co., Inc.*, 51 F.3d at 1439.

Convoy has alleged that DAT creates entry barriers and limits the capacity of existing competitors to expand output in the relevant market by using non-compete agreements and exclusive use arrangements, ECF 36 at ¶ 48, by controlling significant volume of historical pricing data, *id.* at ¶¶ 71, 72, and via network effects, *id.* at ¶ 49. Given these allegations, this Court cannot say that Convoy has failed, as a matter of law, to plausibly allege that DAT possesses "monopoly power in the relevant market." *See Verizon Commc'ns Inc. v. L. Offs. Of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

DAT next argues that even if Convoy has sufficiently plead facts to plausibly allege that DAT possesses monopoly power in the relevant market, Convoy has failed to plausibly allege that DAT engages in anticompetitive conduct. ECF 55 at 16, 19. As noted above, Convoy alleges that DAT engages several types of anticompetitive conduct. *See, e.g.*, ECF 36 at ¶¶ 48, 49, 71, 72. DAT argues that these allegations fail because they are either "boilerplate" or "implausible." ECF 55 at 19. This Court disagrees.

First, this Court does not find, for the purposes of a motion to dismiss, that Convoy's allegations of anticompetitive behavior are either boilerplate or non-case specific. ECF 55 at 19. Instead, as noted above, Convoy's allegations are specific to the conduct that DAT allegedly engages in to dissuade entry or growth in the relevant market. These include both non-compete provisions and exclusive use arrangements, which are directly at issue in the underlying claims against Convoy. ECF 36 at ¶ 48. Convoy also alleges that DAT's market control is protected by "network effects," wherein DAT's services are more valuable to brokers and carriers because the non-compete and exclusive use contracts funnel a high volume of users to DAT, which in turn

allows brokers and carriers to match more easily with one another. *Id.* at ¶ 49; *see also Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 780 (N.D. Cal. 2022) (finding that network effects create "high barriers to entry" where "even if a new service offers higher quality features than incumbent services, the new service is inherently less valuable because it has a smaller user base than incumbent services"). As such, Convoy alleges that DAT's non-compete provisions and exclusive use arrangements have a measurable effect on the relevant market beyond the contracts themselves. ECF 36 at ¶ 49. This Court cannot say that these allegations are insufficient, when taken as true, to state a claim for monopolization under the Sherman Act.

Nor is this Court convinced by DAT's argument that the allegations are "implausible" because Convoy was able to develop a competing spot freight matching services product. ECF 55 at 19. "[T]he mere fact that a competitor entered the market does not defeat . . . allegations that barriers to entry are high" at the motion to dismiss stage. *CollegeNet, Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926, 959 (D. Or. 2018). The fact that Convoy was able to develop a competing product does not mean that DAT's conduct did not create barriers to entry into the market. It may be that these barriers were ultimately too low to constitute the type of significant barrier required to prevail on a claim for monopolization under the Sherman Act. But that is a question of fact that is beyond the scope of a motion to dismiss. *See Retrophin Inc. v. Questcor Pharms., Inc.*, 41 F. Supp. 3d 906, 917 (C.D. Cal. 2014) ("[W]hether there are in fact significant barriers to entry is not an issue appropriately decided on this [Rule 12(b)(6) motion to dismiss].").

DAT alternatively argues that the existence of Truckstop.com—another entity in the relevant market—defeats Convoy's monopolization claim. ECF 55 at 19–20. As Convoy correctly states, however, "[i]n evaluating entry barriers, [courts] focus on [an entity's] ability to

constrain not 'those already in the market, but . . . those who would enter but are prevented from doing so.'" *Rebel Oil Co., Inc.*, 51 F.3d at 1493 (quoting *United States v. Syufy Enter.*, 903 F.2d 659, 672 n.21 (9th Cir. 1990)). As such, the existence of an existing competitor does not, by itself, defeat Convoy's ability to state a claim for monopolization. Instead, this Court considers Convoy's factual allegations which, if taken as true, suggest that DAT has both a sizable share of the relevant market and engages in conduct that creates both barriers to entry and barriers to expansion.

Finally, as discussed above, this Court finds that Convoy has sufficiently alleged an antitrust injury due to DAT's actions. As such, this Court finds that Convoy has sufficiently pled all elements of monopolization under Section 2 of the Sherman Act to survive a motion to dismiss. DAT's motion to dismiss Convoy's monopolization claim under the Sherman Act (Counterclaim Two) is therefore DENIED.

### 3.   Attempted Monopolization in violation of 15 U.S.C. § 2 (Counterclaim Three)

Convoy's third counterclaim is also for a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, based on attempted monopolization. ECF 36 at ¶¶ 99–105. To state a claim for attempted monopolization, Convoy must plausibly allege: "(1) that [DAT] has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (citation omitted). To establish a dangerous probability of success, plaintiffs must (1) . . . "define the relevant market" and (2) "demonstrate that substantial barriers to entry protect that market." *United States v. Microsoft Corp.*, 253 F.3d 34, 81 (D.C. Cir. 2001). "The determination whether a dangerous probability of success exists is a particularly fact-intensive inquiry." *Id.* at 80.

DAT does not contest the relevant market, but again argues that Convoy's "conclusory '64% market share' allegation should not be credited because . . . there are insufficient factual allegations to support this number." ECF 55 at 21. As discussed above, this Court is unpersuaded by DAT's argument. Convoy has alleged that DAT controls "over 64% . . . of the relevant market . . . based on the volume of loads posted to DAT and the understanding that a significant portion of those loads are exclusive to DAT." ECF 36 at ¶ 45. This is sufficient under Ninth Circuit precedent. *See Newcal Indus. Inc.*, 513 F.3d at 1045 (stating that there is "no requirement that [the element of market power] of the antitrust claim be pled with specificity"); *Klein*, 580 F. Supp. 3d at 777 ("[B]ecause the Ninth Circuit has held that a plaintiff need not plead market share with specificity, courts frequently have held that a rough estimate of the defendant's market share is sufficient at the pleading stage.").

In arguing for dismissal of Convoy's attempted monopolization claim, DAT also renews its argument that Convoy has failed to show barriers to entry into the relevant market. ECF 55 at 21. DAT argues that "[n]either a claim for monopolization or attempted monopolization can succeed if it is undisputed that 'competitors have expanded output in the recent past or have the ability to expand output in the future.'" *Id.* DAT attributes this principle to the Ninth Circuit case of *American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal & Professional Publications, Inc.*, but the Ninth Circuit's analysis in that case is readily distinguishable from the facts of the present case. *See* 108 F.3d 1147, 1154 (9th Cir. 1997).[5] In

---

[5] This Court notes that the quotation that DAT attributes to *American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal & Professional Publications, Inc.* does not appear as quoted anywhere in the cited case. 108 F.3d 1147 (9th Cir. 1997). The relevant language from *American Professional Testing Services* appears to be that in order to show barriers to entry and barriers to expansion, "[t]he plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their

*American Professional Testing Service, Inc.*, the Ninth Circuit noted that the existence of twenty-nine competitors in the relevant market "suggest[ed] that any barriers to entry may not be that significant." *Id.* The court did not hold, as DAT argues, that the existence of an alleged existing competitor in Truckstop.com, or the emergence of a single competitor in Convoy, defeats any claim for attempted monopolization. Moreover, unlike in *American Professional Testing Service, Inc.*, where the only alleged barrier to entry was the reputation of the attempted monopolizer, Convoy has pled barriers to entry including non-compete provisions and exclusive use arrangements, control over historical and real-time data from the relevant market, and network effects. ECF 36 at ¶¶ 48, 49, 71, 72. These allegations plausibly allege barriers to entry sufficient to support a claim for attempted monopolization.

Finally, as discussed above, this Court finds that Convoy has sufficiently alleged a causal antitrust injury due to DAT's actions. As such, this Court finds that Convoy has sufficiently pled all elements of attempted monopolization under Section 2 of the Sherman Act to survive a motion to dismiss. DAT's motion to dismiss Convoy's attempted monopolization claim under the Sherman Act (Counterclaim Three) is therefore DENIED.

### 4. State Law Claims: Illegal Contracts in Restraint of Trade in Violation of ORS 646.725 (Counterclaim Four); Monopolization in Violation of ORS 646.730 (Counterclaim Five); Attempted Monopolization in Violation of ORS 646.730 (Counterclaim Six)

Convoy asserts three claims under the Oregon antitrust laws, which mirror exactly the claims asserted under the Sherman Act: illegal contracts in restraint of trade in violation of ORS 646.725, which mirrors Convoy's claim of illegal contracts in restraint of trade under Section 1 of the Sherman Act; monopolization in violation of ORS 646.730, which mirrors Convoy's claim

---

output to challenge the predator's high price." 108 F.3d at 1154 (quoting *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995), *cert. denied*, 516 U.S. 987 (1995).)

of monopolization under Section 2 of the Sherman Act; and attempted monopolization in violation of ORS 646.730, which mirrors Convoy's claim of attempted monopolization under Section 2 of the Sherman Act. *See generally* ECF 36 at ¶¶ 82–129.

"Oregon courts look to federal antitrust decisions for 'persuasive' guidance in interpreting the state antitrust laws." *Or. Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris*, 185 F.3d 957, 963 n.4 (9th Cir. 1999); *see also RB Rubber Prods., Inc. v. ECORE Int'l, Inc.*, No. 3:11-cv-319-AC, 2012 WL 860416, at *10 (D. Or. Mar. 13, 2012) (treating the disposition of Oregon state law antitrust claims as identical to that of the federal claims on a motion to dismiss); *Ford. v. Cascade Health Servs.*, No. 03-6256-TC, 2006 WL 1805954, at *4 n.5 (D. Or. June 29, 2006) (treating the disposition of Oregon state law antitrust claims as identical to that of the federal claims on a motion for summary judgment). Both parties agree that Convoy's state law claims "rise and fall, at the pleadings stage, with Convoy's federal law claims." ECF 57 at 33; *see also* ECF 55 at 24–25. As stated above, this Court finds that Convoy has adequately pled claims for illegal contracts in restraint of trade, monopolization, and attempted monopolization in violation of the Sherman Act. For those same reasons, this Court also finds that Convoy has adequately pled claims for illegal contracts in restraint of trade, monopolization, and attempted monopolization in violation of Oregon state law. DAT's motion to dismiss Convoy's state law claims (Counterclaims Four, Five, and Six) is therefore DENIED.

## CONCLUSION

Convoy's Motion to Dismiss DAT's DTSA misappropriation of trade secrets claim (Count One), Delaware UTSA misappropriation of trade secrets claim (Count Two), unfair competition claim (Count Five), and tortious interference claim (Count Six), ECF 26, is GRANTED with leave to amend. Any amended Complaint must be filed within fourteen days of the issuance of this Opinion and Order. Convoy's Motion to Dismiss DAT's unjust enrichment

claim (Count Four) is GRANTED without leave to amend. DAT's Motion to Dismiss Convoy's

counterclaims, ECF 55, is DENIED in its entirety.

**IT IS SO ORDERED.**

DATED this 24th day of April, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge