Per A. Ramfjord, OSB No. 934024
per.ramfjord@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:   (503) 220-2480

Amy Candido (*pro hac vice*)
acandido@wsgr.com
Charles Tait Graves (*pro hac vice*)
tgraves@wsgr.com
Jordan Jaffe (*pro hac vice*)
jjaffe@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone:  (415) 947-2000
Facsimile:   (415) 947-2099

Attorneys for Defendant

[*Additional counsel for Defendant listed on signature page*]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAT SOLUTIONS, LLC, | Case No.: 3:22-cv-00088-IM |
| Plaintiff/Counter Defendant, | DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT |
| v. | |
| CONVOY, INC., | REDACTED |
| Defendant/Counter Claimant. | JURY TRIAL DEMANDED |

Page 1  -  DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Convoy, Inc. ("Convoy") hereby responds to Plaintiff DAT Solutions, LLC's ("DAT") First Amended Complaint. All allegations in the First Amended Complaint are denied unless expressly admitted.

## INTRODUCTION

1. Convoy admits that this case is related to Convoy for Brokers. Convoy denies the remaining allegations of this paragraph, including that Convoy "impermissibl[y] use[d] DAT data and information in the creation of the product."

2. Convoy admits that it publicly unveiled the Convoy for Brokers product on November 2021, and that Convoy ran a pilot prior to the unveiling. Convoy denies the remaining allegations of this paragraph.

3. Convoy admits the allegations of this paragraph.

4. Convoy denies the allegations of this paragraph.

5. Convoy admits that it purchased benchmark pricing data from DAT. Convoy further admits that this paragraph quotes from select portions of a produced document, which speaks for itself. Convoy denies the remaining allegations of this paragraph, including the out of context characterization of the quote and document.

6. This paragraph quotes from select portions of a document, which speaks for itself. Convoy denies the allegations of this paragraph, including the out of context characterization of the quote and document.

7. Convoy admits that ████████████████████████████████ ████. Convoy denies the remaining allegations of this paragraph.

Page 2  -  DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT

8. Convoy admits that, as is standard with early-stage technology products, Convoy did not generally disclose its work-in-progress on Convoy for Brokers before the public rollout announcement.

9. Convoy admits that it publicly unveiled Convoy for Brokers on November 18, 2021. Convoy denies the remaining allegations of this paragraph.

10. Convoy admits that this paragraph quotes select portions of a produced document, which speaks for itself. Convoy denies the remaining allegations of this paragraph., including the out of context characterization of the quote and document.

11. Convoy denies the allegations of this paragraph.

12. Convoy denies the allegations of this paragraph.

13. Convoy admits that this paragraph quotes from select portions of various agreements, which speak for themselves. Convoy denies any wrongdoing under these provisions or agreements. Convoy admits that Convoy has accused DAT of violating antitrust laws. Convoy denies the remaining allegations of this paragraph.

14. Convoy denies the allegations of this paragraph.

## JURISDICTION AND VENUE

15. Convoy admits that DAT has asserted claims against Convoy for breach of contract and violations of the federal Defend Trade Secrets Act of 2016. Convoy denies that either claim has any merit.

16. Convoy does not contest the Court's subject matter jurisdiction in this case.

17. Convoy does not contest that venue is proper in this District.

18. Convoy does not contest that it is subject to personal jurisdiction in this Court.

## THE PARTIES

19. Convoy does not have sufficient knowledge to admit or deny the allegations of this paragraph and denies them on that basis.

20. Convoy does not have sufficient knowledge to admit or deny the allegations of this paragraph and denies them on that basis.

21. Convoy does not have sufficient knowledge to admit or deny the allegations of this paragraph and denies them on that basis.

22. Convoy admits that it was founded in 2015 in Seattle, Washington. Convoy further admits that several of its executives have experience in the tech industry. Convoy admits that this paragraph includes a select quote from a produced document, which speaks for itself.

23. Convoy admits that the April 2022 funding round resulted in a valuation of $3.8 billion. Convoy further admits that this paragraph lists some of its notable investors.

## FACTUAL BACKGROUND

**A.    Convoy uses DAT's data and load board in connection with its "first-party" freight brokerage**

24. Convoy admits that, as a general matter, a freight broker facilitates the movement of freight from one point to another. Convoy admits that it has operated, in part, as a freight broker in the course of its business. Convoy denies the remaining allegations of this paragraph.

25. Convoy admits that it was founded in 2015 and that it has maintained and operated an internal digital freight network. Convoy denies the remaining allegations of this paragraph.

26. Convoy admits that, as a general matter, a "shipper" is a party that wants to have its own freight transported. Convoy further admits that shippers can include corporations, large retailers, or similar entities. Convoy admits that its shipper clients have included Anheuser-Busch, Home Depot, Proctor & Gamble, and Unilever.

27. Convoy admits that this paragraph includes one possible definition of the term "carrier."

28. Convoy admits that this paragraph provides a partial description of the kinds of services that freight brokers offer. Convoy denies the remaining allegations of this paragraph.

29. Convoy admits that this paragraph provides a partial description of the kinds of services that freight brokers offer.

30. Convoy admits that, as a general matter, a freight broker that operates a digital freight network that connects its shipper clients with carriers is known as a "first-party" or "1P" freight brokerage. Convoy further admits that Convoy's "core business" has been its first-party or internal freight brokerage.

31. Convoy admits that this paragraph provides a partial description of what a freight broker does. Convoy denies the remaining allegations of this paragraph.

32. Convoy admits that in the early stages of its existence, Convoy's network of carriers was not large enough to transport all the loads its shipper clients needed to have moved. Convoy denies the remaining allegations of this paragraph.

33. Convoy admits the allegations of this paragraph.

34. Convoy admits that DAT provides a market-dominant load board and rate data service that truckers, brokers, and carriers rely upon in the business of moving freight, including (for brokers) to find truckers and carriers to move freight. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph, and on that basis denies them.

35. Convoy admits that it has used third-party load boards to post freight since June 2020. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph, and on that basis denies them.

36. Convoy admits that it purchased a subscription from DAT that allowed Convoy to post loads to the DAT load board in 2016. Convoy denies the remaining allegations of this paragraph.

37. Convoy admits that between 2016 and 2021, Convoy purchased RateView data from DAT. Convoy denies or does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph, and on that basis denies them.

**B.    Convoy later uses DAT's proprietary data to create and develop an external load board product for third-party brokers**

38. Convoy admits the allegations of this paragraph.

39. Convoy admits that Convoy and DAT entered into a "Key Account RateView Service Addendum" to purchase RateView data. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph and denies them on that basis.

40. Convoy admits that this paragraph quotes a select portion of the Addendum, which speaks for itself. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph and denies them on that basis.

41. Convoy does not have sufficient knowledge to admit or deny the allegations of this paragraph and denies them on that basis

42. Convoy admits that this paragraph quotes select portions of the Addendum, which speaks for itself. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph and denies them on that basis.

43. Convoy admits that it received RateView pricing data from DAT. Convoy denies the remaining allegations of this paragraph, including the suggestion of any wrongdoing on Convoy's part.

44. Convoy admits the allegations of this paragraph.

45. Convoy admits the allegations of this paragraph.

46. Convoy admits that this paragraph quotes select portions of the National Account Agreement, which speaks for itself. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the contract without its full context.

47. Convoy admits that Convoy and DAT entered into a "Data Analytics Services Addendum" on November 7, 2018 and that the paragraph quotes select portions of that Addendum, which speaks for itself. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the contract without its full context.

48. Convoy admits that it used the DAT load board and data from DAT as intended. Convoy denies all other allegations of this paragraph, including the characterization of the legal effect of the contract without its full context.

49. Convoy admits that the National Account Agreement prevented Convoy from creating a competing load board during the three-year term of the Agreement. Convoy denies that the non-compete provision is "reasonable" or "pro-competitive." Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph and denies them on that basis.

50. Convoy denies the allegations of this paragraph.

51. Convoy admits ███████████████████████████████████████. Convoy denies the remaining allegations of this paragraph.

52. ███████████████████████████████████████████

███. Convoy denies the remaining allegations of this paragraph.

53. Convoy admits the allegations of this paragraph.

54. Convoy admits that ████████████████████████████████████████. Convoy further admits that ████████████████████████████████████████. Convoy admits that this paragraph quotes select portions of produced documents, that speak for themselves. Convoy denies the remaining allegations of this paragraph.

55. Convoy admits that it opened up ███████████████████████████ ████████████████████████████████████████. Convoy denies the remaining allegations of this paragraph.

56. Convoy admits that this paragraph quotes a select portion of a produced document, which speaks for itself. Convoy denies the remaining allegations of this paragraph, including the out of context use of the quote.

57. Convoy admits that this paragraph quotes from select portions of produced documents, which speak for themselves. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the contract without its full context.

58. Convoy admits that ████████████████████████████████ ████████████████. Convoy admits that this paragraph quotes select portions from a produced document, which speaks for itself. Convoy denies the remaining allegations of this paragraph.

59. Convoy admits that this paragraph quotes select portions from produced documents, which speak for themselves. Convoy denies the remaining allegations of this

Page 8 -  DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT
         SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT

paragraph, ███████████████████████████████████████████████████████

█████

60.     Convoy admits that it ████████████████████████████████████

████████████████████████. Convoy denies the remaining allegations of this paragraph.

61.     Convoy admits that ████████████████████████████████████████.

Convoy denies the remining allegations of this paragraph, including that Convoy was "using DAT data to get Boost off the ground."

62.     Convoy admits that DAT and Convoy entered into Amendment 1 to the National Account Agreement on June 18, 2020. Convoy denies the remaining allegations of this paragraph.

63.     Convoy admits that pursuant to Amendment 1, the parties agreed to delete the exclusivity provision from the National Account Agreement, and in exchange Convoy agreed to pay DAT a higher monthly subscription rate than what Convoy had previously agreed to pay in the National Account Agreement. Convoy denies all other allegations of this paragraph.

64.     Convoy denies the allegations of this paragraph, including that Convoy was "developing a third-party load board."

65.     Convoy admits that it posted freight to load boards in addition to DAT. At this time, Convoy is uncertain of when it began posting freight to load boards other than DAT and whether loads were posted to each of the listed load boards.

66.     Convoy denies that it was developing an external-facing load board. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph and denies them on that basis.

Page 9   -   DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT
            SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT

67.     This paragraph is vague and ambiguous to the extent it alleges the contents of a conversation involving an unknown person at DAT at an unspecified date and time, and on that basis, Convoy denies the allegations. Convoy specifically denies that Dan Lewis made any misrepresentations to DAT concerning Convoy's products or services. Convoy admits that Convoy for Brokers competes with DAT in a relevant market for spot freight matching services, but denies that Convoy for Brokers is a "load board" as that term is used in the parties' agreements.

68.     Convoy admits DAT declined to renew Convoy's access to the DAT load board in early November 2021. Convoy denies the remaining allegations of this paragraph.

69.     Convoy admits the allegations of this paragraph.

70.     Convoy admits that this paragraph quotes a select portion of the November 18, 2021 press release announcing Convoy for Brokers, which speaks for itself.

71.     Convoy admits that this paragraph quotes a select portion of the November 18, 2021 Twitter video message announcing Convoy for Brokers, which speaks for itself.

72.     Convoy admits that this paragraph quotes a select portion of a produced document, which speaks for itself. Convoy denies the remaining allegations of this paragraph, including the characterization of the document without its full context.

73.     Convoy admits that this paragraph quotes a select portion of a produced document, which speaks for itself. Convoy denies the remaining allegations of this paragraph, including the characterization of the document without its full context.

## COUNT 1: BREACH OF CONTRACT

74. Convoy incorporates all preceding paragraphs as if fully set forth herein.

75. Convoy admits that DAT and Convoy entered into multiple contracts that governed Convoy's access to the DAT load board. Convoy denies the remaining allegations of this paragraph.

76. Convoy denies the allegations of this paragraph.

77. Convoy admits that this paragraph quotes from the National Account Agreement and the Data Analytics Services Addendum, which speak for themselves. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the agreements without their full context. Convoy denies any wrongdoing under both agreements.

    a. Convoy admits that it purchased RateView benchmark pricing data from DAT. Convoy further admits that data compilations were reproduced to Convoy in discovery. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph and denies them on that basis.

    b. Convoy admits that this paragraph quotes select portions of the two agreements. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the agreements without their full context. Convoy denies any wrongdoing under both agreements.

    c. Convoy admits that this paragraphs quotes select portions of produced documents, which speak for themselves. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of agreements without their full context. Convoy denies any wrongdoing under both agreements.

      d.      Convoy does not have sufficient knowledge to admit or deny the allegations of this paragraph and denies them on that basis.

      e.      Convoy denies the allegations of this paragraph, including that it breached any provisions or agreements.

78.      Convoy admits that this paragraph quotes from the National Account Agreement, which speaks for itself. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of an agreement without its full context. Convoy denies any wrongdoing under the agreement.

      a.      Convoy admits that this paragraph quotes select portions of produced documents, which speak for themselves. Convoy denies the remaining allegations of this paragraph, including that Convoy for Brokers is a load board, and the out of context characterization of the quotes.

      b.      Convoy admits that this paragraph quotes select portions of the November 18, 2021 press release announcing Convoy for Brokers, a produced document, and Convoy's Counterclaims filed in this action, all of which speak for themselves. Convoy denies the remaining allegations of this paragraph, including the characterization of the documents quoted from.

      c.      Convoy admits that this paragraph quotes select portions of produced documents and Convoy's Counterclaims filed in this action, which speak for themselves. Convoy denies the remaining allegations of this paragraph, including that Convoy for Brokers was intended to directly compete with DAT and the characterization of the documents quoted from.

Page 12 -    DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT

79. Convoy denies the allegations of this paragraph, including any wrongdoing on Convoy's part.

80. Convoy admits that this paragraph quotes select portions of a produced document, which speaks for itself. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph and denies them on that basis.

81. Convoy denies that it breached the National Account Agreement, that DAT was damaged, and that DAT is entitled to recover tens of thousands of dollars. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph and denies them on that basis.

**COUNT 2: MISAPPROPRIATION AND MISUSE OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016, U.S.C. § 1836,** *et seq*.

82. Convoy incorporates all preceding paragraphs as if fully set forth herein.

83. Convoy admits that from 2016 through 2021 Convoy purchased RateView data from DAT. Convoy denies the remaining allegations of this paragraph.

84. As to paragraph 84 and its subparts, Convoy admits that DAT provided Convoy with this data and that DAT re-produced the data compilations to Convoy in discovery in this case. Convoy does not have sufficient knowledge to admit or deny when the data was compiled by DAT, and on that basis denies those allegations.

85. Convoy admits that Convoy and DAT entered into a series of agreements. This paragraph purports to characterize the legal effect of provisions in the parties' various agreements, which speak for themselves. Convoy denies any wrongdoing under these provisions or agreements.

   a. Convoy admits that DAT and Convoy entered into a Data Analytics Services Agreement on November 30, 2016 and a related Statement of Work dated

December 2, 2016. Convoy admits that this paragraph quotes select portions of both agreements, which speak for themselves. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the agreements without their full context.

  b.  Convoy admits that DAT and Convoy entered into a Key Account RateView Service Addendum on October 25, 2016. Convoy admits that this paragraph quotes from select portions of the Addendum, which speaks for itself. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the agreement without its full context.

  c.  Convoy admits that DAT and Convoy entered into a Data Analytics Services Agreement, and a related Statement of Work, on April 23, 2018. Convoy admits that this paragraph quotes from select portions of the agreements, which speak for themselves. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the agreements without their full context.

  d.  Convoy admits that it obtained data from DAT pursuant to a June 4, 2018 Statement of Work. Convoy admits that this paragraph quotes from select portions of that Statement, which speaks for itself. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the agreement without its full context.

  e.  Convoy admits that it obtained data from DAT pursuant to an April 30, 2019 Statement of Work. Convoy admits that this paragraph quotes from select portions of that Statement, which speaks for itself. Convoy denies the remaining allegations of this

paragraph, as they purport to characterize the legal effect of the agreement without its full context.

   f. Convoy admits that it obtained data from DAT pursuant to a June 12, 2019 Statement of Work. Convoy admits that this paragraph quotes from select portions of that Statement, which speaks for itself. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the agreement without its full context.

   g. Convoy admits that it obtained data from DAT pursuant to a March 11, 2020 Addendum to National Account Agreement. Convoy admits that this paragraph quotes from select portions of that agreement, which speaks for itself. Convoy denies the remaining allegations of this paragraph, as they purport to characterize the legal effect of the agreement without its full context.

   h. This paragraph is vague and ambiguous to the extent it alleges the contents of conversations involving unknown person(s) at unspecified dates and times, and on that basis, Convoy denies the allegations.

  86. Convoy denies that the data compilations identified constitute proprietary trade secrets.

  87. Convoy does not have sufficient knowledge to admit or deny the allegations of this paragraph, and on that basis denies them.

  88. Convoy admits that the exact compilations were not available to Convoy from another source. Convoy denies the remaining allegations of this paragraph.

  89. Convoy does not have sufficient knowledge to admit or deny the allegations of this paragraph, and on that basis denies them.

Page 15 - DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT

90. Convoy admits that agreements are attached as Exhibits 11-15. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph, and on that basis denies them.

91. Convoy admits that it agreed to refrain from sharing the compilations with any external sources. Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph, and on that basis denies them.

92. Convoy does not have sufficient knowledge to admit or deny the allegations of this paragraph, and on that basis denies them.

93. Convoy denies that ████████████████████████████████ ████████████████████████ Convoy does not have sufficient knowledge to admit or deny the remaining allegations of this paragraph, and on that basis denies them.

94. Convoy denies the allegations of this paragraph.

95. Convoy denies the allegations of this paragraph, including any allegations of wrongdoing.

96. Convoy denies the allegations of this paragraph, including that Convoy made any misrepresentations to DAT regarding its use of DAT data.

97. Convoy denies the allegations of this paragraph, including that Convoy misappropriated and misused DAT's data compilations.

98. Convoy denies that there was any "misuse" and that the compilations are trade secrets.

99. Convoy denies the allegations of this paragraph, including any alleged misuse of DAT data.

Page 16 -   DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT
            SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT

100. Convoy denies the allegations of this paragraph, including that DAT was harmed by Convoy.

101. Convoy denies the allegations of this paragraph.

## PRAYER FOR RELIEF

As to DAT's Prayer for Relief, Convoy denies that DAT has suffered injury or damages and denies that DAT is entitled to any relief in this lawsuit.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Convoy demands a jury trial on all triable issues contained in DAT's claims.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

DAT's claims are barred in whole or part because both claims fail to state a claim upon which relief may be granted.

### SECOND DEFENSE

DAT's breach of contract claim is barred in whole or in part because the agreements and provisions upon which it relies constitute illegal restraints of trade in violation of 15 U.S.C. § 1 and Oregon Rev. Stat. 646.725, and are therefore void and unenforceable.

### THIRD DEFENSE

To the extent it were deemed an affirmative defense – and Convoy does not aver that it is, and instead avers that the matter is a traverse – Convoy did not breach the parties' agreements because it independently developed Convoy for Brokers without using any proprietary information belonging to DAT.

Page 17 -   DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT

## FOURTH DEFENSE

DAT's breach of contract claim is barred in whole or in part by the doctrine of laches, waiver, and estoppel because DAT knew that Convoy had built and operated its digital freight network during the term or the National Account Agreement and took no steps to object or stop Convoy from doing so.

## FIFTH DEFENSE

DAT's breach of contract claim is barred in whole or in part by the equitable doctrine of unclean hands with respect to the rights and obligations under the parties' agreements.

## SIXTH DEFENSE

DAT's breach of contract claim is barred in whole or in part because DAT failed to prevent or mitigate its damages, if any.

## ADDITIONAL AFFIRMATIVE DEFENSES

(Reservation of Right to Assert Additional Defenses)

Convoy may have additional, as yet unidentified, defenses available. Convoy reserves the right to assert additional defenses that are revealed by Convoy's investigation of this action or through discovery.

DATED: May 22, 2023.

STOEL RIVES LLP

*s/ Per A. Ramfjord*
PER A. RAMFJORD, OSB No. 934024
per.ramfjord@stoel.com
Telephone: (503) 224-3380

*Of Attorneys for Convoy, Inc.*

-AND-
Amy Candido (*pro hac vice*)
acandido@wsgr.com

Page 18 - DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT

        Charles Tait Graves (*pro hac vice*)
        tgraves@wsgr.com
        Jordan Jaffe (*pro hac vice*)
        jjaffe@wsgr.com
        Jordan Nelson (*pro hac vice*)
        jordan.nelson@wsgr.com
        Justina Sessions (*pro hac vice*)
        jsessions@wsgr.com
        WILSON SONSINI GOODRICH & ROSATI
        One Market Plaza
        Spear Tower, Suite 3300
        San Francisco, CA 94105
        Telephone: (415) 947-2000

        -AND-
        Jason B Mollick (*pro hac vice*)
        jmollick@wsgr.com
        Praatika Prasad (*pro hac vice*)
        pprasad@wsgr.com
        WILSON SONSINI GOODRICH & ROSATI
        1301 Avenue of the Americas, 40th Floor
        New York, NY 10019-6022
        Telephone: (212) 999-5800

        *Attorneys for Convoy, Inc.*

Page 19 -  DEFENDANT CONVOY, INC.'S ANSWER TO PLAINTIFF DAT SOLUTIONS, LLC'S FIRST AMENDED COMPLAINT